## Kish *v.* Pennsylvania Railroad Co., Appellant.

440

Argued October 10, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert D. Dalzell,* with him *Dalzell, Dalzell, McFall & Pringle,* for appellant.—Under the undisputed facts in this case, plaintiff could not have met his death in the way described and the jury cannot be permitted to guess as to how it might have occurred: Snyder v. R. R., 239 Pa. 127; Lessig v. Light Co., 270 Pa. 299.

The presumption that the decedent used due care has no application because the evidence affirmatively shows the circumstances to the contrary: Lessig v. Light Co., 270 Pa. 299; Folger v. Rys. Co., 291 Pa. 205; Rhodes v. R. R., 298 Pa. 101.

*C. J. Tannehill*, with him *Marshall, Braun & Notari*, for appellee.—It is only in clear cases where the facts are proved by incontrovertible evidence that the rule of incontrovertible physical facts and mathematical tests applies: Scalet v. Telephone Co., 291 Pa. 451.

Since the jury returned a verdict in favor of plaintiff, the evidence must be looked at in the light most favorable to her: Miller v. Tiedemann, 249 Pa. 234; Mountain v. Glass Co., 263 Pa. 181; Thomas v. R. R. Co., 275 Pa. 579; Statler v. R. R. Co., 299 Pa. 321.

The court cannot enter judgment against the verdict of the jury where there is a conflict of evidence on a material fact: Dalmas v. Kemble, 215 Pa. 410; Hugo v. R. R., 238 Pa. 594; Zimmerman v. R. R., 302 Pa. 406; Saxman v. McCormick, 278 Pa. 268; Mills v. R. R., 284 Pa. 605; Ely v. Ry., 158 Pa. 233.

Evidence tending to show that a cut in a train near a permissive crossing was closed without warning is evidence from which a jury is warranted in finding negligence on part of defendant: Dalyanakis v. Ry., 72 Pa. Superior Ct. 276.

OPINION BY MR. JUSTICE MAXEY, November 28, 1932:

This is an appeal from the refusal of the court below to enter judgment for the defendant non obstante veredicto. Plaintiff recovered a verdict in the sum of $15,500 in an action arising out of the killing of her husband, aged 28 years, by a freight train at 11:20 p. m., April 14, 1928, at Duquesne. At the station in that city defendant has five parallel tracks running north and south. Across these tracks is a plank walk nine or ten feet in width which the evidence shows was used by the public.

On the night of the accident, defendant, according to plaintiff's testimony, stopped a thirty-seven car freight train in the middle track, blocking the crossing. Witnesses testified that a cut was made in this train so that pedestrians might use the crossing. This cut was made three or four cars forward from the rear of the southbound train.

An alleged eyewitness to the fatality testified substantially as follows: That he was standing near the old Duquesne Station opposite the new station, that he saw two or three men on the opposite side, that he saw a man start toward the witness's side of the tracks, and that "the cars bumped about that time, and then Mr. Kish got about by the opening and the cars were fully closed, hit him on the side and knocked him between the tracks. ...... He fell forward, like in between the cars." He said there was no warning given before the train struck him. He also said that after the gap was closed the train pulled up about 50 or 60 feet and then stopped again. The crossing was then clear. The witness saw Kish lying between the rails. He also said that Kish was dragged by the train three or four feet when the train backed up and a few seconds later the train started forward.

The flagman who had been called in by the signal from the locomotive saw from the caboose after the train had run a few car lengths the body of a man on the track. He claimed that he pulled the emergency airbrake valve from the caboose, thereby applying the airbrakes and stopping the train. After the train stopped the flagman found the decapitated body of plaintiff's husband lying near the track. On the front wheel of the rear truck of the third car from the caboose there were marks of blood which indicated that this was the wheel that had run over Kish. The railroad company's witnesses, while admitting that the train was stopped near the Duquesne Station, denied that it had been cut. They testified that the train stood completely intact for about fifteen min-

utes at that point, and, when the engineer received a signal to proceed, he called in the flagman and the train started south. After it proceeded four or five car lengths, "the air went on into emergency and that brought the train to a full stop." Appellant contends that the fact that the flagman stopped the train by applying *while in the caboose* the emergency airbrake, proves conclusively that the train could not have been cut as opposing witnesses testified, for there was no evidence of the airbrake line being coupled after the alleged cutting of the train, and disconnected ends of airbrake hose cannot be coupled automatically.

Appellee called numerous witnesses to testify that there was a cut made in the train at the crossing where the deceased was killed. Two witnesses testified that they actually walked through the gap made in the train at this point. One witness testified that she had to cross the track in order to get from the dance hall to a bus which she wished to enter, that the freight train was split near the center of the boardwalk, and that she, carrying a two and a half year old child, went through there. She said she was familiar with this crossing as she had traversed it many times on her way to work. About fifteen minutes after she had entered the bus, she was informed that "a man had been killed down there." The witness claimed to have recalled the night in question because when her husband returned home by the same route a little later, he said that he had seen the man who had been killed at the station.

Another witness gave similar testimony about crossing the center walk at the station while the freight train was cut at that point. He claimed to have remembered the night in question because of his learning about an hour or two later of the death of Kish at that point.

Another witness testified that he saw the front end of the train back up and close the gap and then proceed forward, and that there was no warning given. A little later he saw the body of a man lying near the tracks.

Other witnesses gave evidence of the closing of the gap without previous warning and the moving forward of the train. The train was equipped with automatic couplers which usually connect by mere impact.

This brief summary of the conflicting evidence is sufficient to indicate that there was such an issue of fact raised as to require its submission to the jury. The appellant, however, contends that it was a physical and mechanical impossibility for the accident to have happened in the way described by plaintiff's witnesses. It bases its contention on the testimony of the flagman, who declared that the train was stopped by his action in pulling an airbrake valve just above the door to one side of the caboose. He said: "The pulling down of this valve lets the air out, and as a result all the brakes on the train are automatically applied." If the train had been cut, as appellee's witnesses testified, the airbrake line must have been cut at the same time and have remained so, for the evidence indicated that there was no one present to connect this line at the time of the alleged closing of the gap in the train.

It follows, appellant argues, that there must have been no "cut" made in the train because if there had been, it would not have been possible for the flagman in the caboose to stop by the action he described a thirty-seven car train with an airbrake line disconnected three car lengths ahead. Appellee contends that the credibility of the flagman's testimony as to how he stopped the train was for the jury, for it was a question of fact whether the train was stopped by the flagman's alleged act in the caboose or by his signalling the engineer with a lantern. The flagman testified that ordinarily in stopping the train he would not have used the emergency valve.

While there was no express contradiction of the testimony of the flagman that he had stopped the train by using the emergency valve in the caboose, there was an implied contradiction of it in the testimony of witnesses

who declared that the train had been cut and that they passed through a nine or ten foot gap made by this cutting. If the jurors believed these witnesses, they would necessarily have to reject the testimony of the flagman that he stopped the train from the caboose in the manner stated by him, unless there had been someone present at the time and place the two sections of the train were joined and this person had reconnected the airbrake line. Of this there was no evidence; in fact, the evidence was to the contrary.

On the major question whether or not the train had been cut at the plank crossing, there was a flat contradiction in the testimony, all the members of the train crew and the telegraph operator of the defendant company denying it, and several witnesses, apparently disinterested, asserting it. The court had no alternative except to submit this contradictory testimony to the jury.

There was evidence to support the conclusion reached by the jury that the train had first been cut at the cross walk in front of the station and had been rejoined with its rear segment by the engineer backing up the train, the couplers acting automatically, and that a few seconds later the engineer pulled the train forward for a short distance to test the coupling, and then stopped to receive a signal to proceed. The engineer testified that he received this signal from the flagman, who from a point near the rear of the train moved a white lantern up and down, and the train then started south.

There was suspicion cast upon the witness Seman by the averment of the appellant that one Steven J. Sabo had made an affidavit to the effect that Seman had stated to him that he, Seman, had not seen the accident. When this affidavit was produced Sabo admitted signing it, but declared that he had been induced to sign it when he was drunk and that it was untrue. It was also noted that at the first trial of this case, Seman did not appear to

testify. He claimed that the reason he did not testify then was that he did not know that the case was being tried. The credibility of Seman was for the jury. It is an elementary proposition that it is the province of the jury to determine the credibility of witnesses.

Appellant argues that Kish himself was negligent and that his negligence bars his widow's recovery. It is contended that the presumption that a person who has lost his life in an accident exercised due care disappears in this case before the facts. Appellant argues that because the witness, Seman, heard, before Kish got on the tracks, the bumping of the cars "further up the train," Kish also should have heard the same warning sound and have heeded it. It does not necessarily follow that because Seman heard this bumping that Kish also heard it. The witness said that he did not know whether or not Kish heard it. Neither does it conclusively follow that the sound of "bumping further up the train" of necessity indicated to the persons at or near the station that the gap or cut in the train at the crossing was about to close. They would have had a right to assume that if the gap at this point was about to close, there would be a signal or some specific warning given to persons who were about to cross at that point. Such sounds of motion "up a train" as those testified to by Seman often have other meanings than the closing of a gap made near the rear of the train to facilitate the passage of pedestrians. The question whether or not Kish heard any sound sufficient to warn an ordinarily prudent man not to pass through the cut in the train at the time and under the circumstances described was for the jury.

Plaintiff recovered a verdict and we are now considering the motion of the defendant for judgment notwithstanding it. Therefore, it becomes our duty to read the testimony not only in the light most advantageous to plaintiff, all conflicts therein being resolved in her favor, but she must also be given the benefit of every fact and inference of fact pertaining to the issues

involved which may reasonably be deduced from the evidence. See Guilinger v. P. R. R. Co., 304 Pa. 140, 144, 155 A. 293.

Where, as here, there was evidence of a permissive crossing at the place where plaintiff's husband was killed and evidence that the defendant's train was cut at that crossing and that after a brief interval it backed up without adequate warning and that, in so backing up, it caused the death of plaintiff's husband, and where, as here, there was no fact overcoming the presumption that deceased acted with due care, the question is for the jury. See Dalyanakis v. Aliquippa & Southern R. R. Co., 72 Pa. Superior Ct. 276.

The judgment is affirmed.