## Morin, Appellant, v. Kreidt.

Argued December 5, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William Charles Brown,* with him *Edwin J. McDermott,* for appellant.——On a question of judgment n. o. v. the testimony should not only be read in the light most favorable to the plaintiff, all conflicts therein being re-

solved in her favor, but she must be given the benefit of every fact and inference of fact pertaining to the issues involved which may be reasonably deduced from the evidence: Vlasich v. R. R., 307 Pa. 255.

It must be presumed that decedent was at the time of the accident in the exercise of due care: Lamp v. R. R., 305 Pa. 520; Perry v. Ryback, 302 Pa. 559.

The question of contributory negligence was for the jury: Kerk v. Peters, 261 Pa. 279; Sweeney v. Floyd, 90 Pa. Superior Ct. 14; Johnston v. Cheyney, 297 Pa. 199; Giles v. Leas, 282 Pa. 318.

The appellee was negligent in that he struck the decedent when the latter was upon the highway a sufficient length of time to be seen and the appellee far enough away to bring his car under control: Anderson v. Wood, 264 Pa. 98; King v. Brillhart, 271 Pa. 301.

Defendant was negligent in that he did not stop his car before striking an object that should have been disclosed by the range of his headlights: McGrath v. R. R., 71 Pa. Superior Ct. 1; Serfas v. R. R., 270 Pa. 306.

*H. Rook Goshorn,* with him *Frank R. Ambler* and *Harry S. Ambler, Jr.,* for appellee.—There was no evidence of defendant's negligence: Justice v. Weymann, 306 Pa. 88; Lane v. Mullen, 285 Pa. 161; Clamper v. Phila., 279 Pa. 385.

The presumption of due care on the part of the deceased cannot stand in the face of the positive evidence to the contrary: Cubitt v. R. R., 278 Pa. 366; Lieberman v. Rys., 305 Pa. 412.

Plaintiff was guilty of contributory negligence: Goff v. Boro., 299 Pa. 343; Rhoads v. Herbert, 298 Pa. 522; Alexander v. Express Co., 258 Pa. 378; Crawford v. Traction Co., 102 Pa. Superior Ct. 440.

OPINION BY MR. JUSTICE MAXEY, January 9, 1933:

At 2:20 a. m. on June 10, 1931, Charles J. Morin, aged 49 years, was fatally injured by the defendant's

two and a half ton motor truck. He left surviving him a widow and three children. This truck was being driven by defendant southwardly on the west side of Broad Street, Philadelphia, in the westernmost traffic lane, next to the parking lane. Defendant's truck was being driven at a speed from fifteen to twenty miles an hour. Morin was seen just before the accident by two witnesses. They described him as not walking but standing still in about the middle of the westernmost traffic lane. He had his left hand up to his head. One witness said that Morin was facing west. The other said that Morin's left hand was toward the south. This would also indicate that Morin was facing west. The defendant said that Morin was facing east. There were electric lights near the scene of the accident, but all the witnesses testified that the night was dark and it was raining and the streets were then rather poorly illuminated. The two witnesses who saw Morin and the approaching truck said they first thought that the truck would pass him without doing him injury, but an instant before he was struck they realized that he would be hit. The defendant averred he did not see Morin until a moment before the accident when he appeared suddenly before the right front headlight facing toward the east. It was then too late to stop the truck before knocking him down. Morin was taken to a hospital where he died about five hours later. The truck stopped within two and a half to three feet after causing the fatal injury.

Morin had been up until eleven o'clock the preceding night attending a plasterers' meeting near the center of the city. Then he went with a friend and played pinochle until about 2 a. m. He and his friend then took a northbound trolley on 13th Street and got off at Girard Avenue. His friend said he saw Morin walking north on 13th Street. He had only a short distance to go until he came to Stiles Street, near which his residence was located. Thirteenth Street is east of Broad Street. Morin's home was on 16th Street near Stiles Street. To reach

his home from the place where he had alighted from the trolley car, he had to proceed westerly on Stiles Street across Broad Street. Apparently Morin was on his way home when he was struck. Broad Street is 89 feet in width from curb to curb. Stiles Street crosses it at right angles. It is 43 feet in width between curbs on the east side of Broad Street and is only 20 feet in width between curbs on the west side of Broad Street. The houseline on the north side of East Stiles Street, east of Broad Street, if continued on a straight line across Broad would meet the houseline on the north side of Stiles Street west of Broad Street. The south line of Stiles Street east of Broad Street, if extended straight across Broad Street would strike the curb- or houseline on the west side of Broad Street about 23 feet south of the curbline of West Stiles Street. The accident happened near the point where the south line of Stiles Street if so extended would meet the curbline on the west side of Broad Street.

The case went to trial and was submitted to the jury, which returned a verdict for $5,466.50 for plaintiff. Defendant's counsel presented a point for binding instructions at the trial and after the verdict filed a motion for judgment non obstante veredicto. This motion was granted and judgment entered for the defendant, on the ground that Morin was guilty of contributory negligence.

The first question which arises is that of defendant's negligence. This court in Galliano v. East Penn Electric Co., 303 Pa. 498, 503, 154 A. 805, laid down the following principle governing the operation of vehicles at street intersections: "It is the duty of the driver of a street car or a motor vehicle at all times to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances." It is undisputed that at the time of the accident it was

raining and the night was foggy. This naturally restricted defendant's view ahead. It was clearly the duty of the truck driver so to moderate his speed as to be able to stop his car before striking anyone who would be reasonably likely to appear in his pathway unless, of course, such person suddenly stepped into the pathway.

This court in Mason v. Lavine, Inc., 302 Pa. 472, 153 A. 754, held that one is negligent "who drives an automobile on a rainy, foggy, slippery night at a speed of between twenty and twenty-five miles an hour and whose visibility is limited, owing to the condition of his headlights, to fifteen or twenty feet."

In Mars v. P. R. T. Co., 303 Pa. 80, 154 A. 290, we called attention to the fact that the legislature of Pennsylvania has decreed that no automobile shall proceed under normal atmospheric conditions, even temporarily, with lights that do not illuminate the road so as to render clearly discernible all vehicles, persons or substantial objects seventy-five feet ahead of the motor vehicle. See Motor Code of May 1, 1929, P. L. 905, paragraph A, section 803. We said there further: "Under the circumstances of this case, the speed of the car and the visibility ahead should have been so related to each other that the car could in a sudden emergency, like the one that presented itself to the motorman in the instant case, be stopped within a distance not greater than the length of that visibility."

The defendant testified that when he first saw Morin, the latter was about thirty feet away. He said that he "saw something pass in front of the right-hand headlight." He testified further that the first time he saw Morin was when the defendant crossed Stiles Street right below the southwest corner (of Stiles and Broad Streets). Defendant further testified that there were two drivers on the car; that he "right after the truck left New York" slept until the truck reached Trenton, and then he started driving the truck. He had left Henderson, North Carolina, for New York some time the day

before. The distance was about 500 miles and it took twenty-two hours to make the journey. He was asked: "From the time you left North Carolina, until the time this accident happened, can you tell the jury how much sleep you had?" He answered: "I can't say exactly how much sleep I had."

We think there was sufficient evidence in this case to submit to the jury the question whether or not defendant was sufficiently attentive to the pathway ahead and whether or not in all other respects also he showed due care under the circumstances.

The court in entering judgment n. o. v. based it on the hypothesis that the decedent could have seen the truck and that having seen the truck, "he would have had ample time to step either forward or backward to a position of safety, but instead he remained motionless. If he did, in fact, see the truck, but chose to rely upon the driver's swerving to one side or the other in order to avoid striking him, he was thereby testing a manifest danger, which constitutes contributory negligence," citing Warruna v. Dick, 261 Pa. 602, 104 A. 749. That case was one in which the court refused to declare as a matter of law that the plaintiff-victim was guilty of contributory negligence. That issue was submitted to the jury and it returned a verdict for the defendant. As appears from the opinion, the plaintiff who was blind in one eye "stood with his blind side toward defendant's approaching automobile, the driver of which had no reason to suspect either plaintiff's continuous standing there, or his blindness." It was held that the issues had been submitted to the jury under proper instructions. The only errors assigned were in the charge of the court.

In considering a case on a rule for judgment for defendant non obstante veredicto, it is an established proposition that the testimony must be read in the light most favorable to plaintiff and the plaintiff must be given the benefit of every fact and inference of fact which may be reasonably deduced from the evidence. Another prin-

ciple that applies to a case like this is: When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care. See Perry v. Ryback, 302 Pa. 559, 565, 153 A. 770, and Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353. We find no evidence in this case so conclusively overcoming that presumption as to justify the court below in declaring Morin negligent as a matter of law.

It cannot be judicially declared that the deceased was guilty of contributory negligence because he stood in the cartway of Broad Street directly in the path of the oncoming truck at a time when the truck was at least fifty feet away. Such an act on the part of the deceased might or might not have been negligence, depending on the circumstances. He might have thought the truck was closer to him than it really was and that he would stand a better chance of avoiding injury by remaining stationary and letting the truck pass him. Drivers of motor vehicles when someone is in their path often find it easier to avoid striking him if he stands still than if he moves. When a person stands still it is some indication that he does not intend to move in either direction and the driver of the motor vehicle can govern himself accordingly. When a person is moving and he sees a motor vehicle coming toward him, he is likely to dart back at the very moment the motor vehicle has veered its direction toward the point to which he has retreated.

The decedent had a lawful right to be at the point of Broad Street where he was at the time of the accident. He had as much right to be there as the truck had. His motionlessness is not legally the equivalent of carelessness. It did not by necessary logic constitute the testing of a manifest danger. On the rainy and foggy night of this accident, the beams of the truck's light might have been so diffused as to bewilder the deceased. It is a pos-

sible legitimate inference that he suddenly found himself in a position of peril, and the mere failure to decide correctly upon a course of action when one is unexpectedly confronted with sudden peril does not per se constitute negligence. The truck was not confined to a certain line like a trolley car, and the deceased might have been in doubt as to whether he should move forward or backward. Under the circumstances he might reasonably have concluded that he was doing the prudent thing in remaining stationary, thereby affording the driver an opportunity to pass him on either side.

In the case of Kerk v. Peters, 261 Pa. 279, 104 A. 549, this court said: "The deceased was lawfully on the highway, and he was not guilty of any negligence in attempting to cross it. The blowing of the horn and the approach of the automobile dazed him and the law did not exact from him in his bewilderment the degree of care which he would have been bound to observe if he had not been suddenly confronted with unexpected peril through the act of the defendant." The court in that case held that the negligence of the respective parties to the accident was for the jury.

In Gilles v. Leas, 282 Pa. 318, 127 A. 774, this court said: "Where a pedestrian is crossing a highway at intersecting streets in the customary manner......and there is no obstruction to the driver's view of the crossing, or of the pedestrian's, it becomes the duty of the driver to be vigilant and have his car under such control that he can stop it if objects appear in his path. ...... It is quite clear the traffic should not run him [the pedestrian] down when he is in full view. And when it does, even at a moderate or slow rate of speed, the driver lacks the control of his car necessary under the circumstances and is chargeable with negligence. ...... Although Twenty-third Street is a little wider on one side of Market Street than on the other, the use made of it was such as to bring the place of the accident within what is usually termed a public crossing."

In the case before us Stiles Street was on the defendant's left considerably wider than Stiles Street on his right, so much so that a line projected in a westward direction from the south side of Stiles Street across Broad Street would strike the curbline on the west side of Broad Street about twenty-three feet below the corner. Nevertheless, if the defendant had been alert and vigilant, this fact would easily have been discernible to him and he would have realized that he had not, when he passed the south side of Stiles Street west of Broad, completely passed the line at which pedestrians might cross the street.

The facts in this case are close enough to the facts of the case last cited to warrant following the precedent laid down by this court in that case and declare that the issue was for the jury. Judgment for the defendant n. o. v. should not have been entered.

The judgment of the court below is reversed and it is herein ordered that judgment for the plaintiff be entered on the verdict.