Opinion by
 

 Stadtfeld, J.,
 

 This is an action of trespass for negligence. The statement of claim charged that the plaintiff and her husband, having stepped from a concrete safety island into the cartway of Ardmore Blvd. at the intersection of Sumner Ave. in the County of Allegheny, and while standing in an area which the plaintiff claimed was painted and marked as a safety zone, was struck by the automobile of the defendant driven by the defendant’s agent, causing the injuries complained of. No affidavit of defense was filed. The case went to trial and the jury brought in a verdict in favor of the plaintiff in the sum of $1500. Subsequently, a motion for judgment n. o. v. was filed by the defendant and overruled by the court en banc in an opinion by Dithrich, J. This appeal followed.
 

 On consideration of a motion for judgment n. o. v., it is the duty of appellate court to read the testimony not only in the light most advantageous to the plaintiff, all conflicts therein being resolved in her favor, but she
 
 *52
 
 must also be given the benefit of every fact and inference of fact pertaining to issues involved which may reasonably be deduced from the evidence:
 
 Kish v. Penna. R. R. Co.,
 
 309 Pa. 439, 164 A. 341.
 

 The following are the pertinent facts in the case: Ardmore Blvd. in the Borough of Forest Hills is a state highway, part of the Lincoln Highway system, and consists of an eastbound cartway 30 feet wide, a westbound cartway 30 feet wide, separated by a double track street railway right of way. At the intersection of Sumner Avenue and Ardmore Blvd. and separating the cartway for westbound vehicular traffic on Ardmore Blvd. from the westbound street railways tracks is a concrete island platform 4.2 feet wide and 85 feet long, elevated above the level of the cartway of Ardmore Blvd. so that the portion of the island platform farthest removed from the westbound tracks forms the curb of the westbound cartway of Ardmore Blvd. The plaintiff, accompanied by her husband, on their way home in the early morning of January 1, 1934, at bout 1:20 a.m., alighted from a westbound street car, stepped onto this island platform and crossed its width of 4.2 feet.
 

 It had been raining, but at the time of the accident, it was not raining. The visibility was poor and the highway was wet. There was a street light at this intersection, which extended out over the highway. The plaintiff and her husband having stepped off the street car, looked up and down the highway before leaving the island platform, to make sure no automobiles were coming. The plaintiff claimed that beyond the concrete island and painted on the surface of the highway about
 
 3y2
 
 to 4 feet from the curb edge of the concrete island was a white line about 4 inches wide paralleling the concrete island platform, but it contained no lettering or painting. She then stated that after her husband had looked down the highway, he stepped off; that he was standing down in the cartway close up to the curb
 
 *53
 
 and that she was just ready to take a step off the platform. She stated that she had hold of her husband’s left arm and that he was helping her off the island platform into the cartway. The next thing she remembered was that she was in the Columbia Hospital. The plaintiff offered no testimony as to what happened when she was in the act of stepping from the concrete safety island and being helped to step down. Her husband having died before the time of trial, plaintiff attempted to prove how the accident happened by a Mr. DeHass, called on her behalf.
 

 DeHass testified that at the time of the incident he had been waiting to meet some people at the corner of Sumner Avenue from 11:30 p.m. to 1:20 a.m. across from the car stop. He stated he saw the plaintiff and her husband, “get off the car and they stepped out and he looked up and down, and so did she look up and down the highway. And he stepped down off the curb and turned around just as if to help her down, and she ready to take a step off, when suddenly a car just hit them......DeHass said he didn’t see any other cars passing at the time, and didn’t see this car until it hit the plaintiff and her husband. Since neither the plaintiff nor her witness saw this car there is no evidence of the speed of this car except as may be gained from DeHass’ testimony that the car stopped about 84 feet up the road and that the plaintiff’s husband was lying in the road bisecting the highway, and the plaintiff was some 40 feet westwardly from him. The impact of defendant’s automobile in striking Mr. Bert was so great that he was knocked completely out of his shoes, which remained standing on the cartway at the point of collision. One of Mrs. Bert’s shoes was found between the curb and the track on the eastbound traffic lane.
 

 The plaintiff also called Mr. Braun, a surveyor, who made a survey of the scene of the accident and also some photographs. He testified to the measurements herein-
 
 *54
 
 before stated; also that eastward from the platform, Ardmore Blvd. curves turning to the left, the curve beginning 162 feet from the platform and the extreme point of vision east from the platform is 350 feet. As part of Braun’s testimony, plaintiff’s counsel stated of record that the highway was paved with brick at the time of the accident.
 

 Mullooley, one of the principal witnesses for the defendant, was the driver of the car and testified that the speed of the car was 25 to 35 miles an hour. He said he didn’t see the plaintiff and her husband. Mullooley claimed he was at least 3 feet from the island platform as he passed it. The left front headlight of the defendant’s car was bent a little and the lens broken. Neither the defendant nor the driver of the defendant’s car nor the other two passengers in the car saw the plaintiff and her husband prior to the accident.
 

 Appellant contends (1) that the evidence does not “visualize how the accident happened” and that her case is predicated upon circumstantial evidence of a character which does not preclude the possibility of her having sustained injury in some way other than as a result of the defendant’s negligence; and (2) that plaintiff was guilty of contributory negligence.
 

 As to the first objection, the language of Mr. Justice Schaffer, now Chief Justice, in the case of
 
 Goodall v. Hess,
 
 315 Pa. 289, 172 A. 693, is most pertinent: “The main complaint of appellant, against whom a verdict and judgment were recovered in the court below for negligently causing the death of plaintiff’s husband at a street crossing by running into him with an automobile which defendant owned and was operating, is that the evidence did not sufficiently ‘visualize’ the accident and show the facts connected therewith. Our study of the record presents to our minds a sufficiently clear picture of what happened, which must have been even more distinct to the judge and jury who heard the
 
 *55
 
 witnesses and were familiar with the locality and its surroundings.” The record in the instant case warrants a similar comment.
 

 There is no evidence to support the averment in plaintiff’s statement that there was a safety zone adjacent to the safety island which was used by passengers of the street cars in entering or leaving the cars. This feature is of no importance when we consider the other circumstances disclosed by the evidence.
 

 The testimony is that appel1 ant’s car struck plaintiff’s husband with such force as to impel his body against that of his wife, throwing her a distance of 70 feet from the point of impact and throwing him a distance of 35 feet from this point. We also have the fact that Mr. Bert’s shoes and hat were found at the point where he was struck. Appellant’s automobile came to a stop approximately 84 feet from the point of impact. The driver of the car said that he did not see the plaintiff and her husband, did not know he had struck anyone until he felt a thud, and that he then put on his brakes. The only direct testimony as to the speed of the ear is that of Mullooley, the operator of the car who testified that he was traveling at the rate of 25 to 35 miles an hour. The speed at which defendant’s car was traveling could not, therefore, be accurately estimated because of the distance the automobile ran before it stopped after striking these parties. Striking two human bodies would of itself have the effect of reducing the speed to a considerable degree. If this car traveled 84 feet after a collision of this character, with brakes full on, it must have been traveling at a very high rate of speed, particularly when the distance the two bodies were thrown is considered.
 

 The evidence further indicates that the driver of this car was grossly negligent in that he maintained a high and dangerous rate of speed even though he was approaching an important car stop and a street inter
 
 *56
 
 section at the very time that a street car had just discharged passengers. It was his duty under those circumstances to have his ear under complete control because of the higher right of pedestrians crossing at the intersection. They have the right of way if they are then in the act of crossing. He testified that he did not even see the plaintiff and her husband. He did not know that he struck them; he believed he hit something or somebody only because he felt a thud; then he applied his brakes.
 

 In
 
 Mackin v. Patterson,
 
 270 Pa. 107, 112 A. 738, the court said, at p. 109: “ ‘Vehicles have the right of way on the portion of the highway set aside for them, but at crossings all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians’
 

 Appellant’s driver testified that the weather was misty and visibility was poor. Under these circumstances, the driver of this automobile was bound to exercise a much greater degree of care than if the weather had been clear. He was under a greater obligation to drive carefully and to operate his car only at such speed as to enable him to see objects within the range of his limited vision:
 
 Mars v. Phila. Rapid Transit Co.,
 
 303 Pa. 80, 154 A. 290. His duty of care in approaching an intersection, under these weather conditions, became correspondingly greater. The manner in which this duty was discharged shows that the driver operated his car with a reckless disregard of the rights of others on the highway. He testified that he did not slacken his speed, although he admitted being familiar with the intersection he was approaching. In an apparent effort to show that he had his car under some measure of control, he said that after he felt the thud he applied his brakes and stopped his car within a ear length from the point of impact. According to his testimony, this
 
 *57
 
 should have been within a distance of 12 to 15 feet. Actual measurements taken showed that the car stopped 84 feet from the point of impact. He says he did not see plaintiff and her husband. It was his
 
 duty to see them.
 
 No other car was on this part of the highway at the time and he had practically the entire cartway of 30 feet to himself. Had he paid any heed to the performance of his duties, he could easily have avoided striking these people. In
 
 Smith v. Wistar,
 
 327 Pa. 419, 194 A. 486, the plaintiff was struck by an automobile that did not come to an immediate stop but continued approximately 85 to 100 feet. After the accident, the plaintiff was lying unconscious at least 50 feet from the place where she was hit by defendant’s car. The court said, at p. 423: “The distance defendant’s car continued after striking plaintiff, and the violence of the impact justified the conclusion that the defendant was either traveling at an excessive rate of speed, or was not exercising the degree of watchfulness required of motorists at street crossings:
 
 Schoepp v. Gerety,
 
 263 Pa. 538;
 
 Robb v. Quaker City Cab Co.,
 
 283 Pa. 454;
 
 Johnston v. Cheyney,
 
 (297 Pa. 199, 146 A. 551).”
 

 Neither plaintiff nor her husband were obliged to anticipate that any approaching automobile would be operated carelessly, recklessly and in disregard of all traffic regulations affecting the highway. They were not bound to anticipate that any automobile would be so recklessly operated on a one-way highway, 30 feet wide, with no other car in sight, as to hug the curb of the safety island. No one standing on the concrete island would be obliged to anticipate that an approaching car would be arched or swung over a flat curve of several hundred feet because it was driven at a reckless and illegal rate of speed and run practically against the side of the curb of the safety island. This is especially true in this case where the safety island is at an intersection designed for the special use of pedes
 
 *58
 
 trians. At this particular moment the street car from which plaintiff and her husband had just alighted, was still standing, or just about to move on. The plaintiff was not obliged to anticipate the gross negligence of which the driver of this car stands convicted under the evidence:
 
 Lewis v.
 
 Wood, 247 Pa. 545, 93 A. 605.
 

 Quoting from the opinion of Dithrich, J., in the instant case: “She (plaintiff) would be justified in assuming that any automobile passing the safety zone, where there was sufficient space for three cars to pass, would not be driven so close to the safety island as to strike her when she was in the act of stepping off the island. The question of her contributory negligence was clearly one for the jury and not for the court.”
 

 We are satisfied that it was a question for the jury to decide, and not for the court to declare whether plaintiff was guilty of contributory negligence.
 

 We see no reason to disturb the determination of the jury upon the questions at issue in this case.
 

 Judgment affirmed.