## Tua *v.* Brentwood Motor Coach Company (et al., Appellant).

Argued October 7, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Arthur M. Grossman,* with him *Leonard Mendelson,* for appellant.

*Sanford M. Chilcote,* with him *Dickie, McCamey, Chilcote, Reif & Robinson,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 18, 1952:

The appeal is from the refusal of additional defendant's motion for judgment n.o.v. The action in trespass was instituted by Corinne M. Tua, plaintiff, who was injured while standing on a busy street corner in the City of Pittsburgh when a heavy, metal news stand on the sidewalk was thrown against her when struck

by a passing bus. She sued the Brentwood Motor Coach Company, the transportation company which owned and operated the bus, and this original defendant joined the Pittsburgh Newspaper Publisher's Association, the owner of the news stand, as an additional defendant. The jury returned a verdict for $15,-000.00 against both defendants. When the additional defendant's motion for judgment *non obstante veredicto* was refused, it paid the plaintiff's verdict in full and took an assignment of her rights against the bus company and perfected this appeal.

The original defendant (appellee) contends that appellant was negligent, alleging that appellant permitted its news stand to protrude over the curb into the cartway where it was struck by appellee's bus in passing. Evidence in the record that the news stand did so protrude is extremely meager. The driver and the only passenger on the bus both testified that the bus was proceeding along Diamond Street in the traffic lane nearest the curb, that it came to the corner of Diamond and Grant Streets and paused for passengers with its wheels absolutely parallel to the curbline, that the bus thereafter proceeded forward without the driver turning the wheels at all. It is thus possible to infer that the news stand must have protruded beyond the curb; otherwise the bus could not have struck it since no part of the overhang of the bus extended over the sidewalk. Tenuous though this inference is (especially where the street vehicle traffic is very heavy and in the face of direct testimony that the stand did not protrude past the curb), it was nevertheless sufficient to establish this disputed fact. The settled rule is that on appeal from refusal of judgment n.o.v. the plaintiff must be given the benefit of every fact and inference of fact pertaining to issues involved which may reasonably be deduced from evidence: *Kish v. Penn-*

*sylvania Railroad Co.,* 309 Pa. 439, 164 A. 341; *Morin v. Kreidt,* 310 Pa. 90, 164 A. 799; *Davis v. Feinstein,* 370 Pa. 449, 88 A. 2d 695. It is also clear that the same rule applies in an appeal involving an original and additional defendant. Pa. R. C. P. 2255 provides: "(a) The procedure, including pleadings, between the party joining an additional defendant and the additional defendant shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant."

There is therefore evidence to support appellee's contention as to the projection of the stand over the curb. A question, however, still remains, viz.: can defendant association be convicted of *negligence* merely by showing that its news stand so protruded? Appellee offered no evidence at trial to prove the weight of the metal stand, that it could easily be moved by knocking against it, the length of time the stand had been so projecting over the curb line, or of notice to appellant. The verdict must stand, if at all, upon the bald legal proposition that it is negligent to put a news stand on a city sidewalk in a place from which it may be moved by passersby so as to protrude over the cartway. It is conceded that this point has never before been decided by this Court. Judge SMART, in his dissenting opinion, said: "The basic principle being decided here is that it is negligence to put news stands on city streets without their being fastened. . . ."

Justification for imposing liability was stated by the majority of the court below to rest upon Restatement, Torts, section 302, which reads: "A negligent act may be one which: (a) starts a force, the continuous operation of which involves an unreasonable risk to another, or (b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force

of nature." Appellee in its paper book relies on Restatement, Torts, section 392, which reads: "One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied: (a) if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied, or (b) if the supplier's failure to give to those whom he should expect to use the chattel the information required by the rule stated in §388 is due to his failure to exercise reasonable care to discover its dangerous character or condition." The element essential to imposition of liability under either of these sections is the creation of an *unreasonable* risk of harm to another. The Restatement defines *unreasonableness* at section 291 in these words: "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." The decisive question then is: does the risk that injury may result from a news stand being deliberately pushed or accidentally jostled over the cartway by a passerby, outweigh the social utility of having such stands upon street corners as a means of disseminating news and information to the public? There are two reasons why this question must be answered in the negative.

In the first place, as above stated, there was no proof that appellant knew that its news stand projected over the cartway. Testimony describing the

movements of the bus established, by inference, only that the news stand protruded beyond the curb; it shed no light at all on the questions of when and how it was moved from its customary place on the sidewalk. Appellee takes the position that no such proof was necessary because appellant should have anticipated the possibility that the stand would be moved by a careless pedestrian and should have bolted the stand to the sidewalk so that all movement would have been impossible. But it is a cardinal rule of law that "Want of ordinary care consists in failure to anticipate what is reasonably probable—not what is remotely possible": *Camp v. Allegheny County*, 263 Pa. 276, 282, 106 A. 314. No testimony was offered relating to the weight of the stand, which would have made possible an intelligent assessment of the likelihood of unintentional movement and the need for bolting. The only evidence on this score was given by a policeman, who said on cross-examination that the stand was "pretty heavy". In the absence of testimony, it cannot properly be concluded that a metal box, three feet high, three feet ten and three-quarters inches long, and one foot seven and three-quarters inches wide, is so light that it will be moved from position by accidental jostling. In short, appellee has not proved either that appellant moved the stand to a place of danger or that it was foreseeable that another would so move it.

Furthermore, we are not persuaded that the risk of harm even from a light, easily movable news stand would outweigh its utility. In evaluating the social desirability of having news stands on street corners, it is appropriate to consider the legislative pronouncement of the Council of the City of Pittsburgh contained in Ordinance No. 375, December 24, 1934, which was introduced into evidence. The following sections are pertinent: "Section Two. It shall not be lawful

to put or place any box or boxes, barrel or barrels, or other articles that may tend to obstruct the free use of any sidewalk upon any of the sidewalks within the limits of the city, except articles temporarily placed thereon for the purpose of loading or unloading, removing or storing away.

"Section Three. The provisions of this ordinance shall not apply to the sale, storage, or display of newspapers or periodicals."

While the ordinance was obviously intended to expedite pedestrian traffic on sidewalks and was not directly concerned with the hazards created by such articles, it is at least evidence that the legislative body of the city was aware of the existence of stands like the one here involved and sanctioned their continued use. It is extremely unlikely that the city would have done so had it believed that such use involved an unreasonable risk. In any event, the importance of the press and of an efficient means of distributing newspapers among the populace of a large city are too apparent to require lengthy exposition.

By our discussion of the utility of a news stand we do not intend to imply that such a structure is a privileged object, free of the reasonable limitations imposed upon implements used in other legitimate business enterprises. The social utility of other objects will be considered when an appropriate case is presented for decision. We decline to speculate upon the liabilities which *might* arise in hypothetical future cases, just as we refuse to conjecture that the present appellant was negligent in the absence of testimony that the news stand here in question was so easily movable as to create a serious risk of harm or that it could have been rendered substantially less dangerous by bolting or moving to a different position on the sidewalk.

Since we have decided that appellant's maintenance of the news stand on the sidewalk was not shown to be a negligent act, it is unnecessary to consider the question of proximate cause which was argued at length in the paper books of counsel.

Judgment against the Pittsburgh Newspaper Publishers Association, additional defendant, is reversed and is here entered in its favor *non obstante veredicto*.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The verdict of the jury in this case established that the news stand belonging to the Pittsburgh Newspapers Publishers Association obtruded into the cartway or was so close to the curb line that it came into contact with the overhang of the passing bus belonging to the Brentwood Motor Coach Company. The verdict further established that the stand was not fastened or otherwise secured to the sidewalk and that it was located on a busy street corner traversed by voluminous pedestrian traffic and where a considerable number of persons constantly accumulated in the act of boarding and leaving street cars and buses.

The majority opinion queries the avoirdupois weight of the involved news stand, but it seems to me that its weight has but little to do with the question before us. Whether heavy or light the stand was movable and it was its very movability which precipitated the accident and seriously injured the plaintiff who was standing where she had the right to be.

One can conclude from the majority opinion that if the proprietor of any other kind of a sidewalk business allowed his stand or shop to pass into the street, he would be liable for damage done to those injured

by that trespass. But the majority see a different rule for proprietors of news stands. They say that the social utility of such a business outweighs the risk of harm to the travelling public. Specifically they declare that the "importance of the press and of an efficient means of distributing newspapers among the populace of a large city are too apparent to require lengthy exposition." But this to me seems quite irrelevant to the point of law involved. I would not bow to anyone in my ardent defense of freedom of the press, but I fail to see where freedom of the press is questioned here.

Freedom for the dispensation of news does not mean freedom for the locomotion of newsstands.

A news stand can be attached to the sidewalk without affecting its social utility. Or it can be placed against the building line without unduly inconveniencing the newspaper buyer. Have we reached such a vertiginous celerity in our daily routine that a retarding of two or three seconds in getting our favorite newspaper will work a disabling delay? Or have we grown so indolent that it will immeasurably tire us to step out five or six feet in order to obtain our preferred journal when we know that this little dog trot will inure to the security of innocent bystanders?

At the oral argument before the Court, counsel for the appellant complained that if this verdict is allowed to stand against the news stand proprietor, it will mean that from now on all news stands will need to be anchored to the pavement. That does not necessarily follow. The news stand can be placed somewhere on the corner or on the sidewalk where it cannot possibly be struck by vehicles pursuing their proper lanes of travel. It can be guarded by an attendant who will see to it that the stand is not jostled or pushed away from its safe position. It is interesting to note here that at the time of the accident in this case not only

was there no attendant at the news stand, but there were no newspapers on the stand.

But even if safety for the public should demand that street news stands be bolted to the sidewalk surface or otherwise immobilized, I don't see how that would deprive the proprietor of any constitutional or any legal right. As we travel along the highways of the State we find other types of stands subjected to safety rules. Banana stands, hot dog stands, pottery bazaars, gasoline pumps, watermelon stalls, sandwich counters, ice cream booths, souvenir emporia—all cater to the public and all are either substantially attached to the earth or sufficiently removed from traffic lanes to avoid being pushed against pedestrians or vehicles.

If an exception against safety is made in favor of stands on which newspapers are sold, shouldn't magazine stands also be excepted, and why shouldn't book stores be allowed to place their wares next to the curb, immune from civil liability for damages which proximity could inflict on the passing population?

The fact that an ordinance of the City of Pittsburgh allows news stands on sidewalks at all does not mean that they can be placed in such a manner and at such points as to endanger the travelling public.

The majority opinion states that "there was no proof that appellant knew that its news stand projected over the cartway." But the proprietor certainly knew the dimensions of his news stand and he was charged *by law* with knowledge as to whether it projected out into the street or not. A truck owner driving along the street with a piece of lumber projecting sufficiently from the bed of his vehicle to strike pedestrians could never defend against a suit for damages by asserting that it wasn't proved that he knew that the lumber extended out. It would be his duty to know, as it was the duty of the additional defendant here to know

580

whether his place of business had moved from the sidewalk into the street where it had no right, under any circumstance, to be.

I would affirm the judgment of the lower court holding the additional defendant liable.