James E. MARTIN

v.

**E. I. DU PONT DE NEMOURS & CO.,**
Defendant and Third-Party Plaintiff
and
**Schiavo Brothers, Inc., Third-Party**
Defendant.

**Civ. A. No. 22234.**

United States District Court
E. D. Pennsylvania.

Oct. 15, 1959.

Louis Mitchell Paul, Philadelphia, Pa., for plaintiff.

Richard E. McDevitt, Philadelphia, Pa., for duPont.

Raymond J. Porreca, Philadelphia, Pa., for Schiavo.

VAN DUSEN, District Judge.

There is now before the court plaintiff's motion for a new trial, filed after the grant of defendant's motion for a directed verdict under F.R.Civ.P. 50, 28 U.S.C.A., at the conclusion of plaintiff's case, in this personal injury action tried to the court.

On September 7, 1955, plaintiff was employed by third-party defendant in helping to load and unload a truck which hauled rubbish from various business plants to a dump in Philadelphia. On the afternoon of that day (N. T. 9), his truck picked up some drums weighing 300 to 500 pounds from defendant's plant at 3500 Grays Avenue in Philadelphia and took these drums to the dump (N. T. 3–7). At N. T. 7, plaintiff described the drums as follows:

> "* * * they have lids on top of them, and the drums supposed to be containing with something poisonous, something like that, they usually always put a cross X on them in white." [1]

Three of the drums were marked with a white "X", 3 or 4 were marked with a yellow line and some of the drums had no marking on them at all (N. T. 7–8). Only the drums with the white "X" on them were sealed (N. T. 10). Plaintiff described the loading and unloading operation as follows at N. T. 10:

> "We loaded drums—we back up to the platform and we rolled the drums on, and we get to the dump, we rolled the drums off, and pull a lever on the drums and can dump them."

When unloading the next-to-the-last drum, which was unmarked, "the lid blowed up and what was inside the drum

---

1. At N. T. 50, plaintiff testified that after this accident a fellow-employee told him there was something poisonous in the drums marked "X". At N. T. 70, plaintiff testified that the fellow-employee told him to be careful of the drums with the white crosses before the accident.

splashed out on my foot" (N. T. 11). The drum had been taken down on an elevator at the rear of the truck and tilted "when it exploded" and its contents went on his leg and foot (N. T. 15).

In subsequent parts of his testimony, the plaintiff gave different descriptions of the occurrence of the accident, as follows:

1. At N. T. 51–52, plaintiff testified on cross-examination that the drum hit the ground prior to the lid coming off, using this language:

> "Q. Now, in the deposition on page 31 you testified, 'By the time it hit the ground I guess the pressure from it just boomed and the lid come off.'
>
> "I take it by that you meant that the drum dropped on the ground and the lid came off then, is that correct? A. That's right.
>
> "Q. And how was the lid hooked on this particular drum, the drum that we are talking about? A. Well you have lid coming down on the top of the drum something like this, and then have a hook come around like this and hooks back.
>
> "Q. So that there is a lever that is pulled tight on it, is that correct? A. Yes."

2. At N. T. 78, plaintiff testified, when questioned by the court, that the lid flew off just as he was "getting ready to tilt" it with these words:

> "Well, just getting ready to tilt the drum, this lid flew off, and when the lid flew off this stuff splashed on my foot."

A little pimple appeared on his foot, which started to bother him the next morning, and he testified that he was taken to the hospital by a representative of his employer (third-party defendant). The hospital records (Exhibit P–3) show that he was admitted to the hospital on September 10 and subsequently a skin graft was performed for a second-degree, "acid burn" of the dorsum of the left foot, which did not "heal as rapidly as one would expect" (History of 9/18/55).

The driver of plaintiff's truck (Charles Roy), who was called as a witness by plaintiff, testified that the drums are not identified by any significant markings (N. T. 97), but some drums do have "X" on them (N. T. 105). Some drums, which contain rubbish such as paint cans, have a lock head on them and they are opened at the dump so that the contents can be emptied. Other sealed drums with a bung-type small hole are not opened but are pushed over the banks and buried under dirt by a bulldozer (N. T. 97–101).[2] Both types were on the truck the afternoon of the alleged accident (N. T. 102). Roy did not remember any lid coming off any drum on the afternoon of September 7 or any other time (N. T. 112) and testified (N. T. 102–3):

> "It would be impossible for the lid to come off, sir, because it would be locked with this trip lock, like the band that locks the heads on them. See, that keeps the contents from spilling all over the body of the truck and spilling up and down when you ride down the street with it, or anyone else, if rubbish blowing out you get tickets for that, whatever rubbish in there, so it has a lock on it that keeps the stuff from coming out.
>
> "The Court: I see. Well, now, on this afternoon, at least, you did not see any lid come off?
>
> "The Witness: That's right.
>
> "The Court: And do you remember how many trips you made from du Pont that day?
>
> "The Witness: Well, I don't remember to the minute. I would say about four to maybe six loads

---

2. At N. T. 62, plaintiff testified that there were some drums that could be opened at the dump and emptied and others that could not. The latter drums were thrown off the trucks without being emptied.

of drums were made. We finished the day up. That was our last job with the drums."

■ The account of the accident described under 1 above is quite different from that contained in plaintiff's direct examination and in the testimony referred to under 2 above. The Pennsylvania appellate courts have consistently held that a fact finder may not be permitted to choose between conflicting portions of the testimony presented by plaintiff's witnesses on an issue concerning which he has the burden of proof. Lemak v. City of Pittsburgh, 1941, 147 Pa.Super. 62, 65, 66, 23 A.2d 354; Roche v. Pennsylvania R. Co., 1951, 169 Pa. Super. 48, 56, 82 A.2d 332.[3] In his brief, plaintiff alleges defective sealing of the drum, but there is no evidence concerning the sealing of the lid or that negatives the possibility that a bumpy ride in the truck or contact with the ground, for example, were not the cause of loosening an adequately fastened lid on the drum.

■ Defendant concedes that the doctrine of res ipsa loquitur is not applicable. Under Pennsylvania law, the plaintiff must prove his allegation of negligence, not merely by showing an accident, but either directly or by proof of circumstances from which an inference of the ultimate fact of negligence may reasonably be drawn. See Sierocinski

v. E. I. Du Pont De Nemours & Co., 3 Cir., 1941, 118 F.2d 531; see, also, Miller v. Hickey, 1951, 368 Pa. 317, 81 A. 2d 910; Conway v. Philadelphia Gas Works Co., 1939, 336 Pa. 11, 14, 7 A.2d 326; Foster v. West View Boro., 1937, 328 Pa. 368, 370, 195 A. 82.

■ Plaintiff contends that the drums were under the exclusive control of defendant so that the evidence is within its exclusive possession and, hence, the burden rests upon the defendant to go forward with evidence explaining the cause of the accident. However, the record makes clear that the drums were in the possession and control of plaintiff's employer (third-party defendant). They were on its premises, after a trip of unestablished length in its truck, when the accident happened. For this reason, the Pennsylvania doctrine of exclusive control is inapplicable.[4] See Semensky v. Pennsylvania R. Co., 1944, 156 Pa.Super. 555, 559, 41 A.2d 217; Mitchell v. Scharf, 1955, 179 Pa.Super. 220, 225–226, 115 A.2d 774; Kotal v. Goldberg, 1953, 375 Pa. 397, 408–412, 100 A.2d 630.[5] In reliance on the Pennsylvania cases, which are controlling in this diversity suit, this court has consistently rejected the doctrine of exclusive control in situations such as this. Sierocinski v. E. I. Du Pont De Nemours & Co., D.C.E.D.Pa.1938, 25 F.Supp. 706, 708, reversed on other grounds, 3 Cir., 1939,

3. See, also, Zenzil v. Delaware, Lack. & W. R. Co., 1917, 257 Pa. 473, 477, 478, 101 A. 809; Goater v. Klotz, 1924, 279 Pa. 392, 396, 124 A. 83; Musleva v. Patton Clay M. Co. (No. 1), 1940, 338 Pa. 249, 254, 255, 12 A.2d 554; Wagner v. Somerset County Memorial Park, 1953, 372 Pa. 338, 93 A.2d 440.

4. In Sierocinski v. E. I. Du Pont De Nemours & Co., 3 Cir., 1941, 118 F.2d 531, at page 536, the court said:
"While the defendant's manufacture of the cap was admitted, what the circumstances of its storage and care had been from the time it left the defendant's possession until the plaintiff's employer purchased it was not traced. Proof of manufacture was not sufficient to impute continued control to the defendant. (Citing case.) In fact, the plaintiff's proof did not exclude the possibility

of intervening fault (occurring between the time the Magnesia Company received the cap and the time the plaintiff took it from the storage magazine for use) for which the defendant would not be responsible."

5. In Miller v. Hickey, 1951, 368 Pa. 317, at page 331–332, 81 A.2d 910, 917, the court said:
"Great care must be exercised to limit and restrict this so-called Rule or exception to cases (a) which are exceptional, and (b) where the evidence of the cause of the accident is not equally available to both parties but is peculiarly or exclusively accessible to and within the possession of the defendant. (Citing cases.) Were it otherwise and were the exception applied literally, it would nullify and destroy the long settled and well established principles of negligence."

103 F.2d 843; Leggieri v. Philadelphia Coca Cola Bottling Co., D.C.E.D.Pa.1959, 171 F.Supp. 749, 750; see, also, Giannone v. United States Steel Corporation, 3 Cir., 1956, 238 F.2d 544, 546.

Section 388 of the Restatement of Torts, relied on by plaintiff, is inapplicable because plaintiff has offered no proof that the chattel, as furnished by defendant to third-party defendant, was, or was likely to be, dangerous for the use for which it was supplied. For example, there is no proof of what was in the drum and there are too many possibilities that could have caused the lid to come off this drum without any fault in its fastening on defendant's part. Cf. Tua v. Brentwood Motor Coach Co., 1952, 371 Pa. 570, 92 A.2d 209.

For the foregoing reasons, plaintiff's motion must be denied. Defendant may submit an order in accordance with this opinion.