Eric McNELLO

v.

JOHN B. KELLY, INC., Appellant,

v.

B. J. LUCARELLI AND COMPANY, Inc., Third-Party Defendant.

No. 13077.

United States Court of Appeals Third Circuit.

Argued April 21, 1960.

Decided Sept. 15, 1960.

As Amended on Denial of Rehearing Nov. 17, 1960.

Norman Paul Harvey, Philadelphia, Pa. (John J. McDevitt, 3rd, Philadelphia, Pa., on the brief), for appellant.

Benjamin Pomerantz, Philadelphia, Pa. (Sheldon Kapustin, Raymond Schwartz, Philadelphia, Pa., on the brief), for appellee, Eric McNello.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

■■ On November 15, 1954, while working on the roof of a three-story building under contruction in Philadelphia, by the defendant Kelly, a Pennsylvania corporation, the plaintiff, McNello, a carpenter of twelve years' experience, employed by the third-party defendant, Lucarelli, fell when a brick structure which he was using to aid him in crossing from one compartment to another in the building gave way, causing him to fall and to sustain injuries to his back. McNello sued Kelly, the builder of the brickwork, alleging that he was a citizen of Florida and invoking diversity jurisdiction, and that he had been injured because of Kelly's negligence in improperly building the structure. A jury found that McNello was a citizen of Florida at

the commencement of the action,[1] that Kelly had been negligent, and awarded McNello damages of $25,000.[2]

■ On this appeal we must first dispose of Kelly's contention that there was no diversity of citizenship between the parties and that therefore the district court was without jurisdiction to decide the instant controversy. The record shows the following. McNello, a bachelor, was born in Pennsylvania in 1926 and resided in Pennsylvania until June 1955. He lived first with his mother and later alone. In June 1955 he collected his possessions and travelled to the vicinity of Fort Lauderdale, Florida, the residence of a sister. Except for a trip back to Philadelphia in that month which lasted only a few days, he remained in Fort Lauderdale until August 1955. This suit was instituted on June 24, 1955 when McNello was in Florida. While in that State McNello secured Florida license plates for his automobile, joined the Fort Lauderdale American Legion Post and a carpenters' local union. He did not attempt to register to vote in Florida, stating that he was unable to meet the one year residence requirement. He was registered to vote in Pennsylvania. McNello testified that he worked on three construction jobs in Florida and during this work felt a sharp pain in his back. He stated that he feared that something had gone wrong with the spinal fusion performed to correct his back injury caused by the accident which is the central issue of this case. McNello there-

upon packed his tools and other belongings and returned to Philadelphia to see the doctor who had operated upon him. He did not return to Florida.

McNello testified that he intended to make Florida his home and only returned to Philadelphia when he feared that he had again injured his back. Kelly maintains that McNello moved to Florida solely in order to create diversity jurisdiction, and never intended to make Florida his permanent abode. The undisputed facts and credible testimony are consistent with McNello's and Kelly's respective contentions and we, as was the court below, are bound by the jury's finding, based on sufficient evidence, that McNello intended to change his residence to Florida and was in fact a citizen of that State when suit was filed.

■■ Kelly contends that McNello is not entitled to recover because he was contributorily negligent as a matter of law and also that the judgment must be reversed because the court's charge was fatally defective for the reasons set out hereinafter. The law of Pennsylvania is, of course, applicable here. Kelly's contention that McNello was guilty of contributory negligence as a matter of law is based on the Pennsylvania doctrine that a person injured in the course of using an unsafe procedure, course or path when a safe one is at hand cannot recover from another party even if the latter was negligent. DeFonde v. Keystone Valley Coal Co., 1956, 386 Pa. 433, 126 A.2d 439. The method used by Mc-

1. Jurisdiction is to be tested as of the time of the filing of the suit. See Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., 1899, 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081; Goltzman v. Rougeot, D.C.W.D.La.1954, 122 F.Supp. 700. Cf. St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.

2. The Supreme Court has held that the question of citizenship may be determined at the trial court's discretion, by either the court or by the jury, assuming sufficient facts to go to the jury, Gilbert v. David, 1915, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360. A District Court in this

Circuit, relying on our decision in Guarantee Trust Co. v. Collings, 1935, 76 F. 2d 870, has held that the issue of citizenship is exclusively for the court, Zellem v. Herring, D.C.W.D.Pa.1951, 97 F. Supp. 103, but we believe the District Court's decision resulted from a misconception of our decision. We held only that the court could decide the question of citizenship if it chose but we did not deny the court's authority to send the issue to the jury under proper instruction. We have recently reaffirmed and clarified this position in Seideman v. Hamilton, 3 Cir., 1960, 275 F.2d 224. Certainly the decision of the Supreme Court on this issue is plain.

Nello in climbing from compartment to compartment on the third floor of the building was as follows. He stepped onto one of two unframed dormer windows on the outside wall of the compartment and turned so that he was facing the building. He then moved his left foot around a brick pier, twelve to thirteen inches wide and eight inches deep. This constituted an extension of the face-wall of the building and extended about thirty-two inches above the wall. He then placed his foot on the top of the front wall of the building. This wall was approximately two feet higher than the bottom of the window on which his right foot rested. Next he grasped the brick pier with both hands, placed somewhere below the top of the pier and attempted to bring his right foot up to his left. It was at this point that the brick pier gave way and McNello fell backwards to the ground below.

 The alternate, and allegedly safe, route that McNello might have used to travel from compartment to compartment involved grasping the rafters with both hands and swinging his body up onto the top of the wall. Under the circumstances at bar, however, we need not decide whether the alternate route suggested by Kelly as safe was so much safer in fact than the one employed by McNello that we would be compelled to find that McNello was contributorily negligent as a matter of law. This is so because even if McNello's actual route was apparently unsafe, a possible collapse of the brick pier was not one of the factors that reasonably could have been expected by McNello to make the route which he took a dangerous one. It follows therefore, that McNello's choice of route cannot be deemed to have been the proximate cause of the accident. Even though a man chooses an unsafe course he is not barred from recovery for any accident that may occur and he may only be held guilty of contributory negligence if he falls victim to one of those dangers that should have made him eschew the course which he followed. We cannot say that McNello was guilty of contribu-

tory negligence as a matter of law for it was not shown conclusively that he could reasonably have expected Kelly's pier to collapse.

██ It is equally clear that Kelly's negligence was a fact issue for the jury. Under Pennsylvania decisions in order to find negligence it must first be determined that the defendant owed a duty of care to the plaintiff. In Dahlstrom v. Shrum, 1951, 368 Pa. 423, 84 A.2d 289, 290, the test was stated to be: " * * * whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act." See also Helm v. South Penn Oil Co., 1955, 382 Pa. 437, 114 A.2d 909. Where the scope of the risk reasonably to be perceived is a matter about which reasonable men could differ the question of duty is left to the jury. 2 Harper & James, Torts § 18.8 (1956); Henry v. City of Philadelphia, 1919, 264 Pa. 33, 107 A. 315. Applying these principles to the present case the question was whether Kelly, acting reasonably, should have foreseen McNello's use and manner of use of the pier. The conflicting evidence on the reasonableness of this use and on the general practice of persons similarly situated to McNello make this question one for the jury.

 After finding a duty, but not before, the jury ought to have considered whether Kelly breached that duty. Plaintiff had the burden, in this phase of the case, of proving some substandard conduct on Kelly's part. On this point counsel for both sides devoted much of the trial to the question whether the mortar used by Kelly in constructing the type of brick piers, one of which was here involved, was stronger or weaker than that required by the specifications of Kelly's contract. The conflicting testimony as to this matter raises a typical jury question.

 Kelly contends that the court erred in refusing its request to charge that, "[T]he plaintiff has the burden of proving by a fair preponderance of the believable evidence that the defendant,

John B. Kelly, Inc. of Pennsylvania was guilty of negligence which was a substantial factor in bringing about plaintiff's injury." This contention is without merit. The substance of the requested instruction conforms to part "(a)" of the definition of "legal cause" found in the Restatement of Torts, § 431 (1934). The application of the concept of "substantial factor" is explained in comment (b) to Section 433 of the Restatement of Torts (Supp.1948) as follows: "The question of actual causation involves an application of the laws of physics to the data to determine whether there is an unbroken chain of causes and effects, starting with the negligent conduct and ending with the harm complained of. Once that question is answered 'yes,' the only remaining problem of actual causation is the determination of whether the negligent conduct played a 'substantial' part in bringing about the harm." It is plain then that this test of "substantial factor" is a test of proximate causation and only becomes relevant, if at all, after negligence has been shown. See 2 Harper & James, supra, at pp. 1158–1161; Prosser, Torts (2d ed. 1955), at pp. 221–222. See also the explanation in Simon v. Hudson Coal Co., 1944, 350 Pa. 82, 38 A.2d 259. In the present case the existence or nonexistence of a duty was a crucial issue as was the question whether Kelly breached that duty if indeed there was one. The outcome hinged on the answer to the question whether Kelly was negligent. However, once finding negligence, no reasonable question as to that negligence's

proximate causation of McNello's injuries could have arisen for the jury's consideration. The record discloses no evidence or contention that causes other than the collapse of the pier resulted in McNello's fall and injuries. Nor were any independent intervening agencies or superseding causes proven or even suggested by the defendant. It follows, therefore, that the requested instruction, even if a correct statement of law, need not have been given. This court expressed itself to such effect in Fair v. Floyd, 3 Cir., 1935, 75 F.2d 920, 922. Cf. Brumberger v. Burke, 3 Cir., 1932, 56 F.2d 54, 56. The Supreme Court of Pennsylvania is in accord with this view having held that where proximate causation is not an issue, a charge on the subject is unnecessary and irrelevant. Rodgers v. Yellow Cab Co., 1959, 395 Pa. 412, 147 A.2d 611; Klein v. Weissberg, 1934, 114 Pa.Super. 569, 174 A. 636.

Kelly, in his brief, next complains that "[T]he Court made no effort to explain to the jury the application of principles of law to various possible factual conclusions arrived at by them." We think that this criticism is justified.[3] The court did not charge as to the law of negligence on the important points set out above. It charged on the law of negligence only in the most general and inadequate terms. The jury was merely told that negligence is "[T]he want of due and proper care." Although they were also told that they must consider what an ordinary prudent man would do under the circumstances of the case the

---

3. The court charged on the issue of Kelly's negligence as follows: "Now what is negligence. When you go into your room you are going to consider that. Everything will come right straight down to that one central point: who was negligent or who was not negligent. Negligence has been defined by the Supreme Court to be the want of due and proper care, the want of due and proper care. It is the doing of something that the ordinary prudent man and woman would not do under the circumstances of that case or it is the not doing of something that the ordinary prudent man or woman would do under the circumstances of that

case. Now, that is a very plain definition of negligence, and it can bring about no confusion."

The court also charged: "Now, when it comes to the question of the negligence of the defendant about the construction of the pier, I am leaving that entirely to you, from the evidence. I am making no comment upon that at all you have heard that and you know as much about it as I do, and maybe your collective wisdom will be even greater than any one man. I am leaving that question to you."

The court's charge on the issue of contributory negligence we deem to be sufficient.

court at no time pointed out what the relevant circumstances in this case were. Moreover, an examination of the court's charge reveals that even this wholly abstract instruction was not given in a clear and understandable form. Furthermore, the court nowhere attempted to relate the evidence to the law and thus left entirely to the jury the task of particularizing the legal standard and working out the alternatives possible under the facts. Under such circumstances we cannot help but conclude that the court's charge was totally inadequate to provide even the barest legal guideposts to aid the jury in rationally reaching a decision. That the court's action in this regard would constitute reversible error if proper objection had been made thereto, is plain.

However, the record indicates that Kelly did not protest this aspect of the charge despite having been given ample opportunity to do so. Therefore, by Kelly's own inaction it is precluded from effectively raising this point on appeal. Rule 51, Fed.Rules Civ.Proc., 28 U.S.C. Nevertheless, it remains for us to consider whether the error below was so "fundamental" as to permit us to review it despite the fact that no pertinent objection was made to the charge in the particulars indicated. In Callwood v. Callwood, 3 Cir., 1956, 233 F.2d 784, 788 this court stated that "[W]e might, perhaps, in an extreme situation consider an objection to the charge, even in a civil case, made for the first time on appeal. We would not do so, however, unless the error in the charge was fundamental and highly prejudicial, and our failure to consider the error would result in a gross miscarriage of justice." We hold that this test has been met here. Although this court has had the opportunity to consider the application of what may be referred to as the "fundamental error" doctrine, none of our prior cases seems analogous to the one at bar.[4] As pointed out above, however, we are here presented with an extreme set of circumstances. The question of liability in the present case was submitted to the jury with what was tantamount to no instructions at all. Few more fundamental errors with respect to a charge can be conceived. A holding that counsel's failure to take exception to such a procedure bound his

---

4. Yoham v. Rosecliff Realty Co., 3 Cir., 1959, 267 F.2d 9; Byrne v. Pennsylvania R. Co., 3 Cir., 1958, 262 F.2d 906; Smith v. Ellerman Lines, Ltd., 3 Cir., 1957, 247 F.2d 761; Callwood v. Callwood, supra; Thorp v. American Aviation and General Ins. Co., 3 Cir., 1954, 212 F.2d 821; McDonald v. Pennsylvania R. Co., 3 Cir., 1954, 210 F.2d 524; Kieffer v. Blue Seal Chemical Co., 3 Cir., 1952, 196 F.2d 614; Biggans v. Hajoca Corp., 3 Cir., 1950, 185 F.2d 982; Armit v. Loveland, 3 Cir., 1940, 115 F.2d 308, 313.

The present decision should not be read as overruling or modifying our holding in Armit v. Loveland, supra. The essence of that case can be gleaned from the following passage in Judge Jones' opinion: "The appellants' objection to the trial court's charge with respect to negligence does not question the court's definition of negligence in general, which was both correct and adequate. They complain, rather, that the court did not also say in connection with its charge that the defendants' negligence, if any, had to be found in a violation by the defendants of a duty which they owed to the plaintiff.

We think the court said as much when it instructed the jury that—'The negligence in this case is alleged to consist in not providing a safe place for the plaintiff to work.' As it was the defendants' duty to so act * * * this instruction could only mean that the negligence in the case consisted of the defendants' violation of their duty to the plaintiff. The defendants, moreover, made no request at trial for more specific instructions with respect to the necessity of the jury's being able to find a violation of a duty by the defendants before the latter could be held to have been negligent. Their complaint, therefore, now comes too late. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c."

This case is materially distinguishable on several grounds. First, the element of duty was not a critical issue in the case as it is here. Secondly, the charge, though possibly deficient in one respect, was quite adequate in all other respects. Thirdly, in view of the language the trial judge did use, it was not clear that he had committed any error at all.

client would, in our opinion, result in a gross miscarriage of justice.[5]

The judgment in favor of the third party defendant, Lucarelli, is fully supported by the law and the evidence and will be affirmed. The judgment in favor of McNello and against Kelly will be reversed and a new trial ordered on all issues save one, *viz.*, that of diversity of citizenship, which, having been decided in accordance with the evidence and under a proper charge of the court and being distinct and separable from all other issues, shall not be retried upon remand.

---

5. See Montgomery v. Virginia Stage Lines, Inc., 1951, 89 U.S.App.D.C. 213, 191 F. 2d 770, 774 in which an erroneous failure to instruct the jury as to the duty owed by the defendant, where its duty was a central issue, was reviewed by the Court of Appeals despite the defendant's lack of compliance with Rule 51. Cf. A–F Corp. v. Caporaletti, 1957, 99 U.S.App. D.C. 367, 240 F.2d 53.