John J. HADDIGAN, Administrator of the Estate of Margaret M. Haddigan, Deceased

v.

Cornelius J. HARKINS, Defendant and Third-Party Plaintiff and William Thomas Baker, Defendant,

v.

Thomas W. HADDIGAN, Third-Party Defendant.

Civ. A. No. 34788.

United States District Court
E. D. Pennsylvania.

Sept. 17, 1969.

John M. Hickey, Upper Darby, Pa., James E. Beasley, Philadelphia, Pa. (co-counsel), Beasley, Albert, Hewson & Casey, Philadelphia, Pa., for plaintiffs.

Milford J. Meyer, Meyer, Lasch, Hankin & Poul, Elston C. Cole, Cole, Mc-

Eldrew, Hanamirian & McWilliams, Philadelphia, Pa., for Cornelius J. Harkins.

Lowell A. Reed, Jr., Rawle & Henderson, Philadelphia, Pa., for W. T. Baker.

Joseph R. Livesey, Philadelphia, Pa., for T. W. Haddigan.

### OPINION

JOHN MORGAN DAVIS, District Judge.

This diversity action arose out of a three-car collision on January 5, 1963, on U. S. Route 1 at the entrance to the Pennsylvania Turnpike north of Street Road near Philadelphia. At this point U. S. Route 1 consists of four lanes, two each way, separated by a concrete medial strip. Each lane is 10 feet wide. At the time of the accident (approximately 6:10 P.M.), the road was dry and it was dark. Three principal claims for damages were instituted; a wrongful death and survival action by the administrator of the Estate of Margaret M. Haddigan, deceased; and action for personal injuries and property damage by Thomas Haddigan; and an action for personal injuries which Cornelius Harkins sustained. Numerous cross-claims for contribution were also filed by the defendants and third party defendants. On January 24, 1968, a verdict was returned by the jury, in response to special interrogatories. The Court ordered the entry of judgment essentially in favor of the administrator of the Estate of Margaret Haddigan, and against all other parties.

In reviewing the allegations of error, we are of course required to consider the evidence presented at trial (together with all reasonable inferences to be derived therefrom) in a light most favorable to the successful party. Morris Bros. Lumber Co. v. Eakin, 262 F.2d 259 (3rd Cir. 1959); Frankel v. Willow Brook Marina, Inc., 275 F.Supp. 320 (E. D.Pa.1967).

Briefly, the evidence elicited at trial indicated that on the evening in question, the Haddigan auto was proceeding in a southerly direction on Route 1. As it approached a point adjacent to the en-

trance to the Pennsylvania Turnpike, Mr. Haddigan heard a "thump or bump" in the rear of his car (N.T. p. 290). The car then began veering to the left. Attempts to correct the path of the car were futile since " * * * the steering wheel just spun around" in his hands (N.T. p. 75), and would not respond. The auto then mounted the medial strip and came to rest in a diagonal manner thereon on a line passing through the right front wheel and the left front door (N.T. p. 292–293). At this moment, Mr. Haddigan testified that he did not observe any oncoming traffic in the northbound lanes. He then attempted to extricate his auto by placing the car in reverse, but the engine had stalled. His final recollection was of his wife screaming a warning of oncoming (northbound) traffic. He then observed cars approaching at a distance of 100 to 125 yards. (N.T. p. 294).

This was corroborated in part by the witness Hart who was also proceeding in a southerly direction, behind the Haddigan auto. Hart observed " * * * sparks coming from underneath the [Haddigan] car, like something was rubbing on the road apparently" (N.T. p. 253). He also observed the path which the Haddigan auto had ultimately taken, although it was not too clear whether he actually observed the collision which immediately followed.

It is undisputed that the Harkins auto (which was proceeding in the left or passing northbound lane) struck the Haddigan auto. Mrs. Haddigan was thrown from the car by the impact. There was some question whether the Baker auto then struck the Haddigan auto. However, Mr. Baker himself testified that his auto ran over Mrs. Haddigan who by this time, was lying on the road (N.T. p. 1010). The Baker auto had been travelling in the right-most northbound lane. The Baker auto had to be lifted in order to extricate Mrs.

Haddigan's body. (N.T. p. 830–832; 837–839). She expired at 6:40 P.M. (N.T. p. 55) or about 30 minutes after the accident.

The principal theory of liability which the plaintiff asserted was essentially that both Harkins and Baker were negligent in failing to either slow or stop their vehicles, or otherwise avoid an "obvious peril" which had been visible for at least 100 yards. We shall now examine the various allegations of error.

### I.

Initially, the driver Harkins contends that the finding of negligence on his part and that such negligence was the proximate cause of the decedent's death, was against the weight of the evidence. In his brief, he further contends that any finding of negligence could only result from conjecture and speculation since there was no credible evidence of this type presented to the jury.

Recognizing that credibility of witnesses and their testimony is properly the prerogative of the jury, we need only note that the collective testimony of Mr. Haddigan, taken in conjunction with that of Mr. Hart provided the jury with an ample basis for finding that the Haddigan auto was inextricably located in the oncoming traffic lanes, through no negligence on the part of Haddigan, and that the Harkins auto was proceeding at a rate of speed in excess of the "assured clear distance" rule [1] or otherwise without the exercise of reasonable care to avoid an accident.

Pitted against this evidence was principally the testimony of Harkins himself, who essentially contended that the Haddigan auto was upon him so quickly that he was unable to avoid a collision. However, Harkins' testimony was of questionable validity, since by his own admission his recollection of the details of the accident was rather limited. See N.T. p. 854.[2]

1. 75 P.S.Pa. § 1002.

2. Dr. Sall a neurologist and psychiatrist who treated Mr. Harkins, testified that

Harkins sustained retrograde amnesia which resulted in limited recollection of events preceding the accident. (N.T. p. 935).

■ Confronted with the testimony of the principal witnesses, as briefly recited above, the jury was indeed justified in finding liability on the part of Harkins.

## II.

It is contended that the finding of damages in the survival action in the amount of $7,500 was unsupported by the evidence and grossly excessive. The defendant Harkins correctly observed that the decedent would be entitled to damages for past and future earnings, medical bills and pain and suffering, citing Smith v. Allegheny County, 377 Pa. 365, 105 A.2d 137 (1954).

■ Suffice to say that the evidence adduced regarding the pain and suffering which the decedent experienced was legally sufficient to sustain the $7,500 amount awarded. The witness Solis-Cohen for example, who was one of the first persons on the scene testified that:

\* \* \* there was a body of a woman adjacent to the front bumper and roughly parallel to it lying on the highway.

\* \* \* \* \* \*

I bent down and looked at the woman and she was semi-conscious; she was moaning. There was [sic] sounds coming from her. N.T. p. 831.

\* \* \* \* \* \*

Q. And you said you heard her moaning and groaning when you looked at her?

A. Yes, I did; constantly. (N.T. p. 838–839.

See also N.T. p. 128 and P. Ex. 1).

The damages cannot be regarded as excessive as a matter of law, so as to require either remittitur or a new trial. See Grunenthal v. Long Island R. R. Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

## III.

Similarly, the award of $64,754.30 in the Wrongful Death Action cannot be regarded as excessive. It is contended that the Court erred in permitting the witness Rosner to testify as to the value of the decedent's services.

Mr. Rosner was the proprietor of an employment agency which specialized in the fields of activity which women frequently perform. Through this expert witness the plaintiff established the pecuniary value of services usually performed by a housewife, such as cooking, sewing, cleaning, etc. Weighing each category by the period of time which a housewife would reasonably devote to a given activity, an aggregate amount was calculated.

There is little question that the witness was qualified as an expert in reporting the market value of domestic services. He had been engaged in the domestic employment field for over thirty years. (N.T. p. 530). Had he been called upon to *weigh* each category individually, then perhaps the defendants' position would be more tenable. However, the decedent's spouse, as head of the household testified at length regarding the average hours per week which Mrs. Haddigan devoted to each category (N. T. p. 310, 317, 356–357).

■ With the witness Rosner's testimony thus restricted to this area of expertise, we cannot conclude that this was error. Indeed, rather than merely ask the jury to somewhat arbitrarily place a pecuniary value upon the services which the statutory beneficiaries lost as a result of the decedent's death, this approach permits the finders of fact to fulfill their task with some degree of precision. See Schuler v. Berger, 275 F.Supp. 120 (E.D.Pa.1967), affirmed, 395 F.2d 212 (3rd Cir. 1968).

About 3½ years after the accident, Mr. Haddigan remarried. The Court would not permit this fact to be introduced into evidence. The defendants contend that they were entitled to bring this fact to the attention of the jury in mitigation of damages, especially after the witness Rosner testified regarding the value of the decedent's services which the statutory beneficiaries lost as a result of her death.

■ The basis of the exclusion of this fact from the jury was set forth in Johns v. Baltimore & Ohio R. R. Co., 143 F.Supp. 15 (W.D.Pa.1956) affirmed, 239 F.2d 385 (3rd Cir. 1957), wherein it was observed that under the Pennsylvania Wrongful Death Act, the rights of the statutory beneficiaries are determined as of the moment of death. Citing The City of Rome, 48 F.2d 333, 343 (S.D.N.Y.1930), the Court refused to admit evidence of remarriage. Since this decision was cited with approval as recently as 1967, Schuler v. Berger, supra, 275 F.Supp. at p. 127, this Court was constrained to restrict the defendants from pursuing this line of questioning.

It is contended that the authorization by the Court of the use of a blackboard by the plaintiff's counsel in his closing argument, was error. It is not contended that the use of a blackboard *per se* was error; however, since the blackboard contained evidence of the decedent's "services" the defendants assert that this was unduly prejudicial.

■ For the reasons set forth above, the *introduction* of evidence regarding the value of decedent's services was proper. It follows then, that counsel is permitted fair comment on the evidence during his closing summation to the jury. This Court can discern no legal distinction between oral recitation of evidence and the *graphic* presentation of the same matter, via the blackboard.

We note that matters which counsel regarded as outside of the scope of the evidence were objected to beforehand by defense counsel, and properly excluded by the Court, well in advance of any presentation to the jury. See N.T. p. 1061, 1091, 1098, 1100–1105.

IV.

It is asserted that the Court's charge stated that funeral and medical expenses were recoverable under both the Survival Act and Wrongful Death Act.

■ This is not correct. The charge regarding damages under the Survival Act was limited to pain and suffering. See N.T. p. 1193–1194. Regarding the Wrongful Death action, the Court stated:

Your attention is now directed to the claims of the decedent's personal representative or administrator in behalf of the decedent's husband, Thomas Haddigan and his three children. The plaintiff in the Wrongful Death action may recover whatever reasonable funeral, medical and hospital expenses which were incurred as a result of the accident. They have been agreed upon by the parties to be $1,427.30 for the funeral expenses and $17 for the medical expenses, or a total of $1,444.30. (N.T. p. 1194).

Later on, the Court recapitulated the elements of damage under the Wrongful Death Act. (N.T. p. 1196). Finally, the Court warned that:

Extreme caution must be observed by you not to duplicate any items of damages in the two actions; the Survival Action in behalf of the decedent's estate, and the Wrongful Death Action in behalf of her husband and three children. (N.T. p. 1201).

Parenthetically, we note that no objection to the court's charge in this regard was made by any defense counsel "before the jury retired to consider its verdict", as required by Federal Civil Rule 51.

V.

Nor did the Court charge that possible accumulations of the decedent were recoverable under the Wrongful Death Act. Indeed, there was no discussion whatsoever regarding accumulations of the decedent under the Wrongful Death charge. See N.T. p. 1194–1196.

VI.

■ It is asserted that the introduction of United States Life Expectancy Tables (P. Ex. 18) into evidence was error, since "no foundation" was laid. This is clearly without merit. The Court explained their function in a rather de-

tailed manner. (N.T. p. 1199–1201). All counsel were at complete liberty to introduce evidence of the decedent's health, circumstances, state in life, or any other factor which might have otherwise qualified the figure reported from the Tables. Failure to do so cannot now be regarded as the basis for a new trial.

### VII.

It is contended that the Court erred in admitting the testimony of the witness, Harveson, regarding the condition of the Haddigan auto. Harveson was duly qualified as an expert auto mechanic. He examined the Haddigan auto at his shop (an authorized Chevrolet agency) the day after the accident, wherein he observed that a tie-rod was hanging down. He then proffered the opinion that the loss of control to which Thomas Haddigan testified was due to defective steering. (N.T. p. 396).

█ Precisely how this testimony was "irrelevant and prejudicial" is beyond the comprehension of this Court. The mechanical condition of the Haddigan auto prior to the accident was certainly indicative of the cause of the accident (negligence or lack thereof on the part of Mr. Haddigan). In addition, this opinion tended to corroborate the observation of the witness Hart, who observed "something running on the road", (N.T. p. 253).

█ Similarly, Officer Edwards, the investigating policeman testified that he examined the tires of the Harkins auto, and "found them to be poor." (N.T. p. 195). Upon further elaboration, Officer Edwards stated that they had very little tread. It is asserted that this is also irrelevant and prejudicial. Again, since there was substantial testimony by Harkins regarding the relative distance available for stopping his auto or for taking other evasive action, the condition of the tires cannot be deemed irrelevant. In so testifying, Officer Edwards clearly did not rely upon any expertise, but was simply relating a fact which he

discerned in the course of his investigation.

Parenthetically, we note that Officer Edwards was indeed qualified as an expert in the limited area of examination of auto tires regarding their condition. See N.T. p. 187–189. It was part of his duties to examine auto tires and issue summons, if necessary, where tires were patently and dangerously worn.

### VIII.

█ Turning to the points for charge, it was not incorrect, as the defendant Harkins asserts, to require the jury to reduce the Wrongful Death award by one-third in the event that Thomas Haddigan was found to be negligent. See Minkin v. Minkin, 336 Pa. 49, 7 A.2d 461 (1939); Burns v. Goldberg, 210 F.2d 646 (3rd Cir. 1964) and Stafford v. Roadway Transit Co., 70 F. Supp. 555 (W.D.Pa.1947) reversed on other grounds, 165 F.2d 920 (3rd Cir. 1948).

Again, we note that no exception to this charge was made by counsel and must therefore be deemed waived, in accordance with Federal Rule 51. Similarly, any exception to plaintiff's points No. 26 (a) and (f) are also waived for failure to object in a timely manner. See N.T. p. 1118 and 1121.

█ It is further contended that the point for charge to the effect that "the mere happening of an accident does not establish negligence nor raise an inference or presumption of negligence" was error, and that the jury should have been instructed that the accident was "no proof of Harkins' negligence". Suffice to say that the point for charge, as stated, was quite consistent with the decisions of the Commonwealth. See e. g. Steiner v. Pittsburgh Railways Co., 415 Pa. 549, 204 A.2d 254 (1964); Morin v. Kreidt, 310 Pa. 90, 164 A. 799 (1933), cited with approval in Dostal v. Baltimore & Ohio R. R. Co., 189 F.2d 352 (3rd Cir. 1951).

Similarly, the point for charge regarding the so-called mechanical defect doctrine (point No. ·2, third-party defend-

ant) was quite correct and certainly not inappropriate. Unlike the decision of Hartman v. Gieraltowski, 198 Pa.Super. 316, 181 A.2d 688 (1962) upon which the defendant Harkins relies, the charge of the Court in the instant case did not bind the jury to a conclusion of no contributory negligence if they found that the mechanical failure was unknown by Haddigan. On the contrary, the jury was merely instructed that they *may* find that the third party defendant was not negligent. In *Hartman,* supra, the jury was instructed that if the driver has no reason to know that a defective condition exists, he *cannot* be charged with negligence. This was tantamount to binding instructions, and is clearly distinguishable from the charge of the Court in the instant case.

In any event, the matter is rather academic, since the jury did indeed find that the third party defendant (as well as all other drivers) was negligent.

■ The defendant Harkins further asserts that the court erred in charging on Section 1001 of the Pennsylvania Motor Vehicle Code regarding reckless driving; and Section 1002, regarding the so-called assured clear distance rule.[4] Contrary to the assertion by the defendant Harkins, the Court did indeed accompany the recitation of the above statutes with a cautionary instruction on their significance:

> However, I must caution you, that the law is that a violation of a statute does not support a charge of negligence or contributory negligence, unless that violation is a proximate and efficient cause of that accident. (N.T. p. 1191).

■ It is further asserted that the Court erred in charging that negligence may not be *presumed* from the mere fact that a vehicle has crossed the highway, but absent an explanation, the operation of a motor vehicle on the wrong side of the highway is prima facie evidence of negligence. (plaintiff's point No. 10; N.T. p. 1211–1212). How this affects the defendant Harkins is beyond comprehension, since the Haddigan auto (not the Harkins auto) was the only vehicle which crossed the highway. Thus, it was clearly inapplicable to Harkins save to exculpate Haddigan from liability. However, the jury did *not* exculpate Haddigan, but found him contributorily negligent. Thus there was no "error" upon which the defendant Harkins can reasonably complain.

### IX.

■ It is asserted that the Court erred in failing to enter judgment in favor of Harkins and against the defendant Baker, on Harkins' separate claim for his own injuries. However, the jury indicated via interrogatories that all three drivers were negligent. In molding the verdict, the driver Harkins can only be regarded as contributorily negligent as to his independent action against Baker.

### X.

■ The defendant Baker initially asserts that the jury's answers to the interrogatories, which essentially found him negligent, were contrary to the weight of the evidence. In support of this position, the defendant Baker's brief most persuasively and comprehensively analyzes the evidence presented at trial. Essentially, Baker argues that the plaintiff has failed to meet his burden of proving that he (Baker) could have seen the impending danger sufficiently in advance to permit the necessary evasive action. While there was substantial evidence to this effect introduced at trial, there was also ample evidence to the contrary. For example, the witness Hart indicated that the Harkins and Baker autos were travelling "like a team" at a point 100 to 150 yards south of the point of impact (N.T. p. 251). This is the approximate

---

4. In relevant part, this requires a motorist to drive at a speed which will permit him to bring the vehicle to a stop within the

"assured clear distance ahead" 75 P.S. § 1002(a).

distance which Haddigan indicated he first observed the two oncoming autos, after his wife shouted a futile warning. (N.T. p. 294). There was evidence also that Haddigan's headlights were illuminated throughout the entire sequence of events, thus providing ample warning of the impending danger (N.T. p. 342, 344, 769).

The question of Baker's negligence in failing to observe the impending danger presented a classic (albeit difficult) question for resolution by the jury. We cannot conclude as a matter of law, that the jury was clearly erroneous.

### XI.

Baker asserts that the Assured Clear Distance Rule was not applicable to him, since the rule applied only to stationary objects and not to moving vehicles. We need not decide whether this premise was correct. There was ample evidence that the Haddigan vehicle had already become inextricably impaled upon the medial strip for about thirty seconds prior to the collision—this certainly exceeded the few seconds which Baker needed to travel the 100 or 150 yards distance to the point of impact.

### XII.

Citing Liuzzo v. McKay, 396 Pa. 183, 152 A.2d 265 (1959), the defendant Baker contends that the "Sudden Emergency Doctrine" would exculpate him from liability as a matter of law.

The Court recognized the possible application of this doctrine as to all three vehicles. The differences of opinion between the parties essentially centers about two factors; the relative position of the vehicles, and the timing or sequence of events. Stated perhaps more precisely, the application of the sudden emergency doctrine would depend upon the amount of "warning" which the drivers (and especially Baker) actually experienced. Since there was substantial controversy in this regard (as set forth above) the matter was properly presented to the jury for resolution. Again, we cannot conclude that they erred as a matter of law.

### XIII.

With regard to the death of the plaintiff's decedent, it is contended that there was no proof that the defendant Baker proximately caused her death.

There was ample evidence again as set forth above, that Baker's auto struck the decedent. If Mrs. Haddigan had been discovered dead immediately after the accident, there would be some basis for concluding that she *may* have been killed solely by the first impact. However, since she lived for 40 minutes thereafter, there was ample basis in fact for the jury to conclude that *both* impacts contributed to her death. Unlike Denneny v. Siegel, 276 F.Supp. 281 (E.D.Pa. 1967) upon which the defendant Baker relies, there was no legal requirement for expert medical testimony to attempt to discern whether only the first of the two blows actually caused her death. As set forth in *Denneny*, supra at p. 281, "laymen in the ordinary affairs of life" were clearly entitled to infer that there was a causal relation between the Baker contact and the decedent's death. In this regard, we note that Mrs. Haddigan sustained "severe head injuries" according to the hospital records. (P.Ex. 1), and ultimately died from "simultaneous internal injuries" according to the death certificate. (P.Ex. 5). As previously noted, Baker himself proffered the opinion that his auto must have run over Mrs. Haddigan.

### XIV.

In his motion for a new trial, the defendant Baker objects to the Court's failure to grant *plaintiff's* points for charge Nos, 2, 4, 11, 14, 15, 16 and 17. We need not consider this for two reasons. First, it is doubtful that a *defendant* has standing to object to the denial of *plaintiff's* points for charge. Had the defendant Baker desired to submit similar points (or even adopt those previously submitted by the plaintiff) he was free to

do so. The record is devoid of any objection by the defendant Baker to various rulings by the Court on the points enumerated above, although required to do so by Federal Civil Rule 51.

However, the basis for this allegation of error (which is applicable to Baker's points No. 13, 15, 17 and 23) was that the Court failed to relate the facts of the case to the law, citing McNello v. John B. Kelly, Inc., 283 F.2d 96 (3rd Cir. 1960). After examining this decision and the cases cited therein (footnote 4, p. 102), we do not believe that such an "exceptional circumstance" existed in the instant case, as in *McNello*. As plaintiff's counsel observed, this was a conceptually simple trial. Counsel were forewarned that any detailed discussion of testimony would more appropriately be left to counsel in their closing speeches (which lasted 3½ hours). The basis for refusing Baker's points for charge recited above, was essentially that they contained erroneous factual conclusions, intertwined with statements of law, in the opinion of the Court.

Examining the entire charge as we must, Ridgway National Bank v. North American Van Lines, Inc., 326 F.2d 934 (3rd Cir. 1964), we cannot conclude that it falls within the proscription of *McNello*, supra.

## XV.

■ The defendant Baker has rather vigorously asserted that the Court erred in permitting testimony of Mr. Rosner, (the employment agency proprietor) to the extent that his calculations exceeded $70 per week, since this was the sum claimed in the plaintiff's pre-trial memorandum as the cost of employing persons to perform the services which a housewife normally conducts. This argument is without merit for two reasons. Assuming (without deciding) that a pre-trial memorandum may be properly elevated to the status of a "pleading", it is elementary that Federal Civil Rule 15 would authorize amendment (even by the Court's own motion) of the pleadings to conform with the evidence actually elicited.

Even under the Standing Order of this Court adopted October 23, 1958, the defendant's position is untenable. The purpose of the Standing Order *inter alia* is to facilitate trial by precluding surprise. Once the defendants were apprised of the expected testimony of the witness Rosner (which they knew or could have known by discovery), they could hardly be heard to assert surprise. In the instant case, the pre-trial memorandum at issue adequately performed its intended function of placing opposing counsel and the Court on notice regarding the contemplated testimony regarding the value of decedent's services.

This Court has also painstakingly reviewed all of the additional allegations of error which counsel have raised. Some were untimely, having been filed more than 10 days after entry of judgment, in violation of Federal Rule 59(b) (See e. g. "Supplementary Grounds" of Defendant Baker, filed over 10 months late). In so holding, we note that a party cannot "reserve the right" to extend the 10 day limitation expressed therein. Marks v. Philadelphia Wholesale Drug Co., 125 F.Supp. 369, 374 (E.D.Pa.1954) affirmed 222 F.2d 545 (3rd Cir. 1955).

Many others were simply general catch-all assertions which were wholly lacking in the specificity required by Rule 7(b). Still others raised matters which were not objected to in a timely manner. In this regard, the "general exception" assertion by counsel is not sufficient to fulfill the requirement for specificity as set forth in Rule 51. See Trent v. Atlantic City Electric Co., 334 F.2d 847, 857–858 (3rd Cir. 1964).

Finally, the remainder not expressly discussed in this opinion did not rise to the magnitude of affecting the "substantial rights of the parties", to warrant the relief requested. See Federal Rule 61.

Accordingly, the motions of the parties for a New Trial or for Judgments N.O.V. are collectively denied.

It is so ordered.