Hanna M. AYOUB and Margaret Ayoub, his wife, Appellants,

v.

Dr. H. N. SPENCER, M. D., Appellee.

No. 76–1408.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1976.

Decided Feb. 18, 1977.

Aaron D. Blumberg, Charles G. Young, III, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa., for appellants.

Barton L. Post, William F. Sullivan, Jr., Post & Schell, P. A., Philadelphia, Pa., for appellee.

Before ROSENN, FORMAN and GARTH, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal from a denial of a motion for new trial of a medical malpractice action brought by Hanna Ayoub and his wife, Margaret, to recover damages for permanent paraplegia allegedly sustained by Mr. Ayoub as a result of the negligence of Dr. H. N. Spencer, the 'defendant physician. The complaint of the Ayoubs alleged that they were subjects of a foreign nation[1] and Dr. Spencer was a citizen of Philadelphia, Pennsylvania, thus furnishing diversity jurisdiction. The case went to trial in the United States District Court for the Eastern District of Pennsylvania to a jury, which returned a verdict for Dr. Spencer. The Trial Judge subsequently entered a final judgment, after denying the Ayoubs' motion for a new trial.

Mr. Ayoub was employed by his brother, Naim Ayoub, as a furniture refinisher, and had fallen on November 5, 1971, while handling a dresser at work. He allegedly injured his back, for later that day he began experiencing pain between his shoulders that radiated bilaterally from his back around to the front of his chest. Mr. Ayoub was unable to return to work and saw three doctors before being referred by an agent of the workmen's compensation carrier to the appellee, Dr. H. N. Spencer, an orthopedic specialist. Dr. Spencer saw Mr. Ayoub and his wife[2] on December 14, 1971, at which time he conducted a short examination, took X-rays and prescribed a back brace, pain medication and muscle relaxants. Additionally, Dr. Spencer scheduled another appointment for December 27, 1971, during which he performed no examination other than ascertaining if the brace fitted properly. There was sharply conflicting testimony concerning whether Dr. Spencer scheduled another appointment for January 10, 1972 for Mr. Ayoub, and whether he told Mr. Ayoub that he would be able to return to light work on January 15, 1972. It is agreed, however, that Mr. Ayoub never returned to see Dr. Spencer and did go back to work on approximately January 15.

In early August 1972, Mr. Ayoub saw a general practitioner who referred him to a neurosurgeon, Dr. Haft. On August 10, 1972, while driving to see Dr. Haft, Mr. Ayoub became permanently paralyzed.

Appellants, the Ayoubs, raise three issues. First, they contend that the District Judge failed to instruct the jury properly on contributory negligence. Second, they argue that the District Judge erred in his charge on the issue of proper diagnostic testing. Third, they urge that the District Judge erred in permitting defense counsel to attack plaintiffs' credibility on the basis of a document not received in evidence.

At the close of evidence, the trial judge instructed the jury on the issue of contributory negligence as follows:

"Let me read that again: An injury may be said to be proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or the omission played a

---

1. Later they claimed to be subjects of Jordan.

2. His wife, who spoke and understood English better than her husband, accompanied Mr. Ayoub to defendant's office and assisted with the communication problem.

substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the act or omission.

"In that respect in a case such as this, because of what I have mentioned to you, the testimony we have heard about this kind of condition and its consequences generally, you should consider the following: In determining whether the acts of the defendant were the proximate cause of the injury of which the plaintiffs complain you may also consider whether the husband-plaintiff, that is, Mr. Ayoub's failure to take subsequent medical care and treatment was a substantial factor in bringing about those injuries. The defendant in this case has raised the issue of what we call contributory negligence. That is, if you should find that what was a cause of this was the plaintiff's own conduct, failure to go get other medical treatment, then you may conclude that he is barred from recovery because his own conduct was a substantial factor in bringing about the injury, and in Pennsylvania a person who is what we say contributorily negligent is barred from recovery if their conduct was a substantial factor in bringing about the injury." (Tr. 8–22 to 8–23).

\* \* \* \* \* \*

"The second factor if you conclude that is so and Dr. Spencer was negligent is the item I mentioned about contributory negligence. Even though Dr. Spencer was negligent, and even though what he did was a proximate cause of Mr. Ayoub's injury, you may now take up the question as to whether or not Mr. Ayoub himself was contributorily negligent. If you conclude that he contributed to his own injury by the same standard that was a proximate cause, that is a substantial factor, as I defined it to you, then the plaintiff is not entitled to recover and the verdict

should be in favor of Dr. Spencer." (Tr. 8–23 to 8–24).

\* \* \* \* \* \*

"The plaintiff will be entitled to recover if you believe under the rules that I have given you he has made out his case in the standards that I have mentioned showing that Dr. Spencer was negligent and that was a proximate cause and also that he has not been contributorily negligent." (Tr. 8–35 to 8–36).

Appellants' attorney took exception on the ground that the charge to the jury inextricably intertwined the issue of contributory negligence with that of proximate cause.

Diversity of citizenship being the sole basis for federal jurisdiction here, Pennsylvania substantive law is applicable. *McNello v. John B. Kelly, Inc.,* 283 F.2d 96, 99 (3d Cir. 1960). Under Pennsylvania law, Dr. Spencer had presented sufficient evidence to warrant submission of the issue of contributory negligence to the jury.[3]

■ In examining an alleged erroneous instruction to the jury, it is necessary to view the charge as a whole. *Ely v. Reading Company,* 424 F.2d 758, 760 (3d Cir. 1970). Our function is to determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury. *James v. Continental Insurance Co.,* 424 F.2d 1064, 1065 (3d Cir. 1970). Applying this standard here, it is obvious that the charge as a whole inadequately put in issue the alleged contributory negligence of Mr. Ayoub.

In charging the jury that

"if you should find that what was a cause of this was plaintiff's own conduct, failure to go get other medical treatment, then you may conclude that he is barred from recovery because his own conduct was a substantial factor in bringing about the injury, . . . ." (Tr. 8–22)

---

**3.** *Dougherty v. Philadelphia National Bank,* 408 Pa. 342, 184 A.2d 238 (1962) and cases therein cited; *Brough v. Strathmann Supply Co.,* 358 F.2d 374 (3d Cir. 1966) and the cases therein cited; *Walsh v. Miehle-Goss-Dexler, Inc.,* 378 F.2d 409 (3d Cir. 1967).

the trial court intertwined the issues of contributory negligence and proximate cause. "It is plain then that this test of 'substantial factor' is a test of proximate causation and only becomes relevant, if at all, after [the] negligence [of Mr. Ayoub] has been shown." *McNello v. John B Kelly, Inc., supra,* at 101; *Dickerson v. American Sugar Refining Co.,* 211 F.2d 200, 202 (3d Cir. 1954). See 2 Harper & James, Torts § 18.8 at pp. 1158–1161; Prosser, Torts § 42, p. 244 (4th ed., 1971). See also the explanation in *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A.2d 259 (1944). In the present case the issue of whether or not Mr. Ayoub's conduct was reasonable was a crucial one. In the charge, the District Judge emphasized and made numerous references to the issue of proximate cause, i. e. whether "Mr. Ayoub's failure to take subsequent medical care and treatment was a substantial factor in bringing about those injuries."[4] But the unreasonableness of Mr. Ayoub's conduct was a prerequisite to any finding of contributory negligence. This should have been made perfectly clear to the jury. We are convinced that this issue was not properly clarified for the jury and that confusion may have resulted to appellants' prejudice.

It is true that the court subsequently charged

"you will then come to the key question, whether or not the plaintiff has met his burden of persuasion, proving by a preponderance of the evidence that Dr. Spencer failed to exercise the care of an orthopedic specialist or a reasonable man as I have described it. Similarly you will have to make the same judgment in re-

spect to the defendant's contentions of contributory negligence." (Tr. 8–33 to 8–34).

However, a reading of the charge as a whole,[5] and considering its general effect leads to the conclusion that the jury may have been misled into believing that if Mr. Ayoub's failure to seek further medical treatment contributed to his injury, then he was barred from recovery without regard for the reasonableness of his conduct. The Supreme Court of Pennsylvania has warned that "[c]ourts must be careful not to confuse or equate contributory negligence with proximate cause." *Crane v. Neal,* 389 Pa. 329, 332, 132 A.2d 675 (1957), *overruled on other grounds, McCay v. Phila. Elec. Co.,* 447 Pa. 490, 291 A.2d 759 (1972).[6] Here, these issues were so intertwined in the instructions that a proper understanding of the separate questions for determination was highly unlikely.[7] *See Smith v. Clark,* 411 Pa. 142, 190 A.2d 441 (1963).

Moreover, the court failed to explain adequately to the jury the application of principles of the law of contributory negligence to various possible factual conclusions at which they might arrive. Although the trial judge instructed the jury that it was to find whether Dr. Spencer "failed to exercise the care of an orthopedic specialist or a reasonable man as I have described it. Similarly you will have to make the same judgment in respect to the defendant's contentions of contributory negligence," he did not make clear that the standard of conduct required of plaintiff to avoid contributory negligence was that of a reasonably prudent person under similar circumstances.[8]

---

4. Tr. 8–22.

5. Tr. 8–6 to 8–52.

6. Ironically *Crane v. Neal* was overruled because it, too, failed to clarify properly the distinction between contributory negligence and proximate cause. *See, McCay v. Phila. Elec. Co.,* 447 Pa. 490, 495, 291 A.2d 759 (1972).

7. What the jury ultimately found, of course, is beyond our knowledge. In determining whether erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the verdict is not crucial. *Ma-*

*lat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Vaughn v. Philadelphia Trans. Co.,* 417 Pa. 464, 468, 209 A.2d 279 (1965). If it appears that such instructions might have been responsible for the verdict, a new trial is mandatory. *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.,* 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); *Riesberg v. Pittsburgh & Lake Erie R.R.,* 407 Pa. 434, 180 A.2d 572 (1962).

8. See *Tiller v. Atlantic Coast Line R.R.,* 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610 (1942); *Baltimore & Potomac R.R. v. Jones,* 95 U.S.

This failure allowed the jury to employ any standard it might choose; indeed, as explained above, it allowed the jury to find contributory negligence based solely upon proximate cause. *See, Almaraz v. Universal Marine Corp.,* 472 F.2d 123 (9th Cir. 1972).

■ The trial court charged on the law of contributory negligence only in the most general and inadequate terms, entangled with the law of proximate causation. While a comprehensive review of the evidence is not generally required, the District Court's failure, here, to relate the parties' contentions to the law of contributory negligence left the jury without "guide or compass" to aid it in rationally reaching a decision. This constituted fundamental error requiring reversal. *McNello v. John B. Kelly, Inc., supra,* at 102–103.

Since there will be a new trial, it would seem desirable to consider briefly appellants' remaining contentions submitted on this appeal that the District Judge erred in charging on the issue of proper diagnostic testing and in permitting defense counsel to attack appellant's credibility on the basis of a document not received in evidence.

Appellants contend that the District Judge erred in failing to charge their Supplemental Request No. 10.[9] Actually, the District Judge did not charge Appellants' Request No. 10 as proposed but did charge, in pertinent part, on diagnostic testing:

"I instruct you that if you conclude that the testimony supports the notion that there are a variety of ways of performing these tests that Dr. Spencer is not obliged to perform all of the tests or only half of the tests. It would be up to you to determine if what he did, even

though he may not have done all that some other doctor said he should do, whether or not nevertheless what he did under all the circumstances was in keeping with the standard that he should have honored as an orthopedic specialist at that time, . . ." (Tr. 8–17 to 8–18).

Elsewhere in the charge the District Judge defined such "standard" as follows:

"A physician who is a specialist in orthopedic surgery is required to possess and to use in the treatment of a patient the skill and knowledge usually possessed by orthopedic surgeons in the same or similar locality giving due regard to the advanced state of the profession at the time of treatment . . . ." (Tr. 8–14).

■ Appellants contend that the court ignored the uncontradicted testimony of defendant's own expert witnesses that various neurological tests should have been performed by Dr. Spencer. Normally, a party is bound by the uncontradicted testimony of his own expert witnesses. *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440 (1965). However, here, a number of witnesses expressed divergent opinions. Thus, it was within the province of the jury to determine which opinions it would believe and which it would discredit. Each expert's testimony tended to qualify the testimony of the preceding experts.

■ It was the jury's role to decide whether each expert's opinion was modified by the qualifications placed thereon by the other experts. *Slater v. Erie Lackawanna Ry.,* 300 F.Supp. 1, 3 (W.D.Pa.1968), *aff'd per curiam,* 411 F.2d 1015 (3d Cir. 1969). The District Judge's charge informed the jury that if it found the expert testimony

439, 24 L.Ed. 506 (1877); W. Prosser, Handbook on the Law of Torts, 153–68 (3d ed. 1964).

9. "In this case there has been presented competent expert testimony regarding the appropriate examinations and tests which should have been employed by a specialist in orthopedic surgery in order to evaluate or properly diagnose the presence or absence of damage to a thoracic intervertebral disc. As you will recall, the expert testimony included the necessity for testing numbness or 'sensory distur-

bances'. If you find from the evidence in this case that the defendant, Dr. Spencer, suspected or should have suspected a possible thoracic disc injury to Mr. Ayoub and that he failed to properly and adequately test for numbness or 'sensory disturbances' by utilizing the tests or examinations referred to by the several expert physicians who testified in regard thereto, you may find the defendant liable to plaintiffs for the consequences of his failure to conform to the requisite standard of care." (App. 1·1a)

on diagnostic testing to be contradictory, the jury was to decide whether defendant's conduct "was in keeping with the standard that he should have honored as an orthopedic specialist at that time . . . ." Taken in conjunction with the definition of standard to which the District Judge referred as above set forth, the charge cannot be said to be erroneous.

Finally, appellants assert that the court erred in allowing defense counsel to attack appellants' credibility during his closing argument based on Jefferson Hospital records which were not in evidence.[10] Appellants argue that defense counsel's reference to the hospital records was improper and that the District Judge's comments were not adequate to cure the error.

During his closing speech to the jury, appellee's counsel argued that Mr. Ayoub's trial testimony was inconsistent with his medical history as recorded in Lankenau Hospital and Jefferson Hospital. The Lankenau records, which had been introduced into evidence had been entered by Dr. Richter, a witness for Mr. Ayoub. The Jefferson Hospital records were never introduced into evidence.

Dr. Richter testified that when a patient is referred from Lankenau Hospital to Jefferson Hospital, a copy of his entire chart is generally transmitted along with the patient. He stated, "[t]his is so the continuity care is not lost and it is a useful thing, but I am certain part of the history would have been gotten from me and some of it gotten directly from Mr. Ayoub. I don't know." (Tr. 3–114).

Appellants contend that Dr. Richter's testimony was not concerned with the content of the Jefferson medical history and therefore defense counsel's reference to the contents of the history constituted error. Indeed, Dr. Richter had never even seen the Jefferson chart on Mr. Ayoub. His testimony in this regard was directed entirely toward a general practice of Jefferson Hospital in obtaining their medical histories as taken at Lankenau Hospital.

The remarks of counsel were required to be confined to the evidence admitted in the case and reasonable inferences drawn therefrom. *Watn v. Penn. R.R. Co.,* 255 F.2d 854 (3d Cir. 1958); *Robinson v. Penn. R.R. Co.,* 214 F.2d 798 (3d Cir. 1954). Reversible error is committed when counsel's closing argument to the jury introduces extraneous matter which has a reasonable probability of influencing the verdict. *Rommell-McFerron Co. v. Local U. No. 369, Int. Bro. of Elec. Wkrs.,* 361 F.2d 658 (6th Cir. 1966); *Twachtman v. Connelly,* 106 F.2d 501 (6th Cir. 1939).

To the extent defense counsel, here, implied that the Jefferson Hospital history was based on a second, independent contradictory statement by Mr. Ayoub, his remarks were improper and were not justified by the record. Furthermore, the District Judge's comments[11] were not sufficient to mitigate the prejudicial effect which may have resulted. The jury should have been instructed at least to disregard counsel's reference to the absent Jefferson Hospital records; not merely to "recall the testimony about that."

---

**10.** During defense counsel's closing argument to the jury, the following colloquy took place:

"Mr. Post [Defense Counsel]: * * * I just ask you to use as Mr. Litvin [Plaintiffs' Counsel] said your own common sense. He goes to another hospital. Does that hospital pick up the history from the previous hospital? Maybe they do. Look at that history in Jefferson Hospital. See if it is a word for word history from Lankenau.

"Mr. Litvin: Your Honor, I must object. Neither Mr. Post nor I have put those Jefferson Hospital records into evidence to my knowledge.

* * * * * *

"The Court: There was testimony about what they said and the jury will have to recall the testimony about that. I show the Lankenau Hospital record, not the Jefferson.

"Mr. Litvin: Your Honor, there was testimony by Dr. Richter, I believe, as to how those things are put together, but there was no testimony as to what was or was not in the various Jefferson records.

"The Court: I think he did speak to the history being somewhat similar and his giving a guess maybe it was carried over. The jury will recall that testimony."
(Tr. 7–121 to 7–122).

**11.** See footnote 10, *supra.*

For the reasons stated above, the District Court's order denying plaintiffs' Motion for New Trial is reversed and the case will be remanded to the District Court for further proceedings consistent with this opinion.